## BRUNO v STATE

Ohio Appeals, 6th Dist, Lucas Co

No 2874.   Decided Jan 5, 1934

Daniel H. McCullough, Toledo, and Eugene Howard, and Nolan & Chestosky, Steubenville, for plaintiff in error.

Frazier Reams, Prosecuting Attorney, Toledo, Harry Friberg, Toledo, and J. S. Rhinefort, Toledo, Assistants, for defendant in error.

JUDGES FARR and POLLOCK, (7th Dist) and JUDGE WASHBURN (9th Dist), sitting by assignment in place of JUDGES RICHARDS, WILLIAMS and LLOYD, (6th Dist).

## OPINION

By POLLOCK, J.

The Grand Jury of Lucas County returned an indictment charging first degree murder jointly against Frank Vacchiano and Albert Bruno, that on the 29th day of March, 1933, in the City of Toledo, Lucas County, Ohio, they did unlawfully and maliciously, with premeditated malice, kill John McLaughlin. After the return of this indictment the plaintiff in error, Albert Bruno, was placed on trial, which resulted in a verdict of first degree murder without recommendation. Sentence was afterwards passed upon the accused. This action is prosecuted to reverse the judgment for errors which it is claimed occurred in the trial of the case.

It appears from the evidence that on the 29th of March, 1933, John J. McLaughlin, a clerk in the Park Lane Hotel, was shot to death. On that morning two parties, and the State claims that the parties were the persons named in this indictment, entered the hotel, and just after entering the hotel they commenced to fire at McLaughlin, resulting in his immediate death.

The first error urged is misconduct on the part of the prosecuting attorney, in the voir dire examination of John D. Elliott, called as a juror in the case, in asking the following questions, which were objected to and objection overruled:

"Q. Are you acquainted with Yonnie Licavoli?
A. No, sir.

Q. Are you acquainted with Wop English,
A. No, sir.

Q. Did they ever come to that restaurant to eat to your knowledge? A. No, sir, not that I know of.

Q. Do you know whether Vacchiano ever came to that restaurant? A. I don't know the man.

Q. Do you know whether Bruno, the defendant sitting here with the glasses on, ever came there? A. No, sir."

Elliott did not become a member of the jury, but at the time the questions were asked there were ten members of the jury in the jury box who heard the questions asked and answered, and it is claimed that these jurors would be prejudiced by the asking of these questions. Nothing further appears in the record in regard to who the persons named in the two questions were. It was stated in the brief that they were reputed gang leaders in the community. Whether they were or not, this was inquiring into the acquaintance of this witness with these two parties, and we think the State had a right to know who the proposed juror associated with. The remaining questions were intended to elicit whether the prospective juror knew the defendant below and the other party jointly indicted with him. We see no error in permitting these questions to be asked the juror and answered. The Supreme Court of this state. in the opinion in **State v Hoffman, 86 Oh St, 235,** says:

"The object of the examinations of persons called to act as jurors is to determine whether or not they are qualified to sit in the trial, and for this purpose a rigid examination is allowed before their acceptance by the parties to the cause."

The Supreme Court of the United States in Conners v United States, 158 U. S., 413, said:

"It is equally true that a suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion or prejudice that would affect or control the fair determination by him of the issues to be tried. That inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. This is the rule in civil cases, and the same rule must be applied in criminal cases."

We think that the questions asked were proper inquiries for the State to make of

prospective jurors, and there was no error in the court overruling the objection.

The next error complained of is misconduct of counsel for the State in his opening statement to the jury. The attorney for the state said:

"The evidence will show that Albert Bruno and Frank Vacchiano were friends and associates in the commission of crime, that they had known each other for some time, and they had a plan and agreement together for the commission, I say, of crime."

Objections were made to these statements and overruled by the court. The attorney further stated in reference to Frank Vacchiano going to the Park Lane Hotel a few days before this homicide, securing a room and going to this room with a lady whom he represented as his wife. After some time, the deceased, who was then a clerk on duty in the hotel, called Frank Vacchiano down and asked him whether the lady was his wife. A conversation ensued between them. The lady was called down and it developed that they were not husband and wife, and they were asked to leave the hotel, and did leave the hotel, but not until after there was some angry feeling between the clerk and Frank Vacchiano. It was objected that such testimony was incompetent and could not be introduced. This was overruled upon the part of the court, and this is urged as error. During the introduction of evidence the State attempted to introduce testimony of such facts. Objection was made and sustained.

"A reference to evidence which later proves to be incompetent is not reversible error, even though the objection is raised to the statement when made."
12 Ohio Jurisprudence, pp. 525 and 530.

A statement made by counsel of the evidence that he expects to introduce is not reversible error unless it appears that counsel made the statement in bad faith, even if it turned out that such evidence was incompetent.
Wray v State, 5 C.C., N.S., 427;
Nelson v State, 212 SW, 93.

We can not find that the statement was not made in good faith on the part of counsel for the State. In addition to this, §13449-5, GC, requires that:

"A judgment of conviction shall not be reversed unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial."
State v Moore, 124 Oh St, 465.

There was no prejudicial error in the court overruling the objection of the accused.

It is further urged that the verdict is against the weight of the evidence, or that the evidence does not sustain by the degree of proof required the verdict returned. We will not recite the evidence as it appears in the record, but will content ourselves with referring generally to it. It appears in the record that on possibly the 26th of March, Frank Vacchiano appeared at this hotel and secured a room, as we have stated, and that he was required to leave the hotel, and did so under some feeling against McLaughlin, who was afterwards killed. There was at that time a colored boy or man, by the name of Fred Taylor, employed as a bell boy. He was present at that conversation. It also appears that about six o'clock on the morning of the 29th, Taylor was sweeping in front of this hotel, and that two parties drove up in an automobile in front of the hotel. One of the parties asked Taylor if McLaughlin was in the hotel. Being informed that just at that time he was not, the parties drove away. In a short time afterwards they returned. Mr. McLaughlin was then in the lobby of the hotel, at the desk. It was the custom to keep the doors of the hotel locked at that time in the morning. The front door was locked. The two parties again appeared at the front door, and Taylor, upon inquiring whether he should let them in, was told by McLaughlin to open the door. As Taylor opened the door, the two parties pushed in through the door. The state claims the parties were Albert Bruno and Frank Vacchiano, and with a remark "There he is; let him have it", they both commenced to fire. McLaughlin dropped. After that there were some remarks made between these two parties about also giving it to Taylor, who was standing alongside of the parties during all of the occurrence. After requesting or begging them not to do so, Taylor started to run, and there were shots fired at him. He got out of some rear door of the hotel and did not appear again until after the homicide was over. The accused, Bruno, was arrested with Frank Vacchiano in Indiana, and after being taken from there to Cincinnati, Bruno was returned to Toledo.

John C. Gomph had an apartment in this hotel with windows opening very near-

ly over the front entrance, which was on what is known as 23rd Street. He testifies that he heard the shooting, got out of bed and went to the window, saw the accused running around the hotel and out to an automobile. Gomph spoke, asking what was going on, when he claims the accused turned his face towards him and fired, the ball going through the window out of which he was looking. Gomph says he was about eighteen or twenty feet away from the accused at the time. After Bruno was returned to Toledo he was lined up at the police station with other parties, and Gomph was asked to identify, if he could, any of the parties in the line as the party who was connected with the homicide of Mr. McLaughlin. He looked at these parties and then asked that an overcoat be placed upon the accused. This was done and then Mr. Gomph announced that he identified the accused as one of the parties. He testifies positively that the accused was the party who he saw running around the building and out to the automobile, and who looked up and fired the gun at him. The accused was also identified as one of the parties who did the shooting in the hotel, by the bell boy, Fred Taylor. He positively identifies him. Taylor testifies that Bruno was one of the parties in the automobile when inquiry was made of him if McLaughlin was in the hotel. In addition to this positive testimony as to the identity of the accused, a policeman standing in the street some distance away from this hotel, saw an automobile on the morning of the homicide, which was the same kind of an automobile as the one which these two parties had when arrested in Indiana, going towards this hotel. Shortly after, he saw the same automobile going in the opposite direction, driving faster, and he identified the accused as being one of the parties in the automobile. In addition to this, we have the testimony of the police officer as to the remarks of the accused to him in regard to where he was on this morning of the homicide; that he was in Toledo, leaving Toledo, and more or less of his association with Frank Vacchiano. At the time of the apprehension of Bruno and Vacchiano in Indiana, they resisted and sought to escape, but were captured, and revolvers were found on both Frank Vacchiano and Bruno. These revolvers were introduced in evidence, and from the testimony of the ballistic experts the balls fired in the hotel at the time of this homicide were fired from one or the other of these revolvers. Some of the balls were identified by this expert as being fired

from the revolver which was taken from Bruno at the time of his arrest. In addition to this evidence, the defendant did not avail himself of the privilege of testifying or offering any evidence on his part upon the trial of the case. The facts appearing in the evidence of the State went to the jury without any denial thereof by Bruno or any witness called by him. The jurors, under our present Constitution, have a right to consider, in arriving at their verdict, the fact that the accused did not testify in the case, and did not deny his identity at the time of the homicide.

We think, without further discussion of the facts, that the jury was warranted in finding that Albert Bruno was one of the active parties in the commission of the homicide of John McLaughlin; that the facts warranted the jury in finding the defendant guilty as charged, beyond a reasonable doubt.

The next error complained of is the lack of consideration of the case by the jury. It is urged that six days were consumed in the trial of this case, and three hours by each side in the argument of the case, and that the jury returned a verdict after deliberating but an hour and fifteen minutes. Possibly all of this does not appear from the record, but granting that it does, this court could not find that the jury failed to give the evidence in this case the proper deliberation by reason of the short time that they considered it. In fact, there were possibly but two questions to be considered. One was, was Albert Bruno one of the parties who participated in the homicide, and the other question, whether mercy should be recommended. We think there was no error in lack of consideration given to this case by the jury.

The next error complained of is misconduct of the attorneys representing the State in the arguments to the jury. All of the misconduct claimed by the plaintiff in error had reference to the recommendation of mercy by the jury. The Supreme Court in this state has determined the question that it is proper for attorneys to argue the question in a first degree murder case, whether the jury should recommend mercy or not. **Howell v State, 102 Oh St, 411,** fourth proposition of the syllabus.

In the opinion in this case, on page 422, the court said:

"It is sufficient to say here that since we have decided that the recommendation of mercy is to be made in view of the evidence disclosed, counsel then have the right to

argue either for or against mercy, according to the facts and circumstances developed on the trial. This is a case wherein the State's counsel were permitted to argue against the recommendation of mercy. The syllabus in the case of Jackson v State, 63 Tex. Crim. 351, is as follows: 'It is legitimate for State's counsel to insist upon the infliction of the death penalty, where the evidence justifies it, but he must confine himself to the record. * * * These arguments, however, as in other cases, should be confined to the facts and circumstances disclosed or not disclosed by the 'evidence'."

Examination of the argument as appears in the bill of exceptions, error is urged both in the opening argument and the closing argument. Both of the attorneys who represented the State argued very strongly that the jury should not recommend mercy. Their arguments are vigorous and emphatic, but we can not say but what they are all based upon the evidence as introduced and as the attorneys had a right to comment on it in the case. Their argument was not based on facts outside of the evidence except in one particular, and under the authority of the Supreme Court, which we have refererd to, it was legitimate for the attorneys representing the State to make such an argument, and we find no error in that regard.

In the closing argument the attorney said: "The court will say to you it's nobody's business what kind of a verdict you return, but it will be only yours, but it is your duty as jurors here to see that justice prevails, that men of this caliber and character can no longer run the streets of Toledo, or any other city, and shoot men and then not take the stand and get by with just life, which means six to fourteen years, is all."

It is the closing part of this quotation that is objected to, and the conclusion to be drawn from it is that persons sentenced for life in this state only have to remain in the penitentiary from six to fourteen years. It is urged that there is no evidence sustaining this expression in the record, and that is true. It is a fact which would not have been permitted to have been proven in the case. It is said that such is the fact by those who have investigated the length of time that prisoners sentenced for life remain in the penitentiary, but it can hardly be said that it is such a well known fact that courts would take judicial notice thereof, and even if it is, should not have

been referred to in the argument of the case, but we come to the further question whether it is reversible error or not.

"It is impossible to define with accuracy the extent to which counsel may go in their arguments to the jury. As a general rule, control of the arguments of counsel is within the discretion of the trial court. It seems clear that considerable latitude may be allowed counsel in inferences and deductions they draw, and in their consideration of the testimony of record, the principal limitations being that the argument should be confined to evidence adduced at the trial."

**12 Ohio Jurisprudence, p. 522, §509.**

We think that the latitude allowed counsel in argument should not be so strictly drawn that it would require reversal of the case for the remarks made by counsel. In addition to that, the construction placed upon §13449-5 GC, heretofore referred to, would apply in reference to this proposition, and we can not say that it affirmatively appears that the accused was prejudiced by this remark or prevented from having a fair trial. There was no reversible error in the argument of counsel to the jury.

The next error complained of is that it does not appear from the record that this crime was committed in Lucas County. There is no direct evidence where the crime was committed, except that it was committed in the lobby or office of the Park Lane Hotel. The location of the Park Lane Hotel is not directly proven by the evidence.

"In the prosecution of a criminal case, it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment."

**State v Dickerson, 77 Oh St, 34.**

It appears that in that case a witness has testified directly that he found the dead body in a certain township, and that the township was in Coshocton County, but there was no evidence that Coshocton County was in the State of Ohio. The Supreme Court said:

"We are not disposed to encourage the lax method of establishing the venue adopted in this case, but from the evidence set

out and the main facts as to location and description contained in other parts of the record, we think the point is not well taken. It clearly appears from all the evidence that the criminal transaction occurred in the State of Ohio."

It appears from the record that John A. Snell was called as a witness and testified that he was a civil engineer and that he made a plat of the surroundings of the Park Lane Hotel, in which the crime was committed, and the interior of the building. We are unable to find this plat with the other exhibits in the case, but this witness testified to what was in the plat, describing the building and locating it as facing 23rd Street. In addition to this, Dr. Frank G. Kreft was called as a witness. He testified that he was coroner of Lucas County, and that soon after the commission of this homicide he went to the scene. He describes the building; that it was a nine-story hotel building, and describes the body of McLaughlin lying on the floor in the lobby of this hotel, and other descriptions. Mr. John C. Gomph was called as a witness. He testified as follows:

"Q. What is your business or vocation? A. Life insurance business. I am general agent of the Penn Mutual Life Insurance Company here in Toledo.

Q. Where do you live? A. In the Park Lane, Apartment 206.

Q. How long have you lived in the Park Lane Hotel in that apartment? A. Several years."

In addition to this evidence in regard to the location of this hotel, the jury, just after being impaneled, was sent to view the premises where the homicide had been committed. Of course the jury could not use what they saw in this view as evidence; yet they could use what they obtained by view in applying the evidence in regard to the location of the building in which the homicide was committed. We think that the jury had a right to find, in the absence of any evidence contradicting these facts, that the homicide was committed in the City of Toledo.

The court will then take judicial notice that the city of Toledo is located in Lucas County, and the further fact that Toledo is the county seat of that county where the trial took place.

Licciardi v State of Ohio, 18 Oh Ap, 118; 15 R.C.L., 1083; 124 A.S.R., 34, annotations; 4 L.R.A., 35, annotations.

In addition, §13449-5, GC, applies to this claimed error.

We think that the commission of the crime was sufficiently proven, that it occurred in Lucas County, and that this court can not reverse the judgment on the ground of failure to prove the venue.

This includes all of the errors urged in this case, and it follows that the judgment of the court below is affirmed. Exceptions noted.

Judgment affirmed.

FARR and WASHBURN, JJ, concur in the judgment.