STATE OF OHIO *v.* SENZARINO ET AL.

(Nos. 8564 and 8583—Decided March 10, 1967.)

Common Pleas Court of Ashtabula County.

*Mr. Charles M. Diamond* and *Mr. Francis A. Varckette,* for plaintiff.

*Mr. Phillip J. Cantagallo* and *Mr. John E. Olsen,* for dedendants.

PONTIUS, J.   The defendants, Dominic P. Senzarino and Clyde C. Perod, were found guilty by a jury of two offenses com-

mitted August 21, 1966: 1) attempting to force entrance into a safe, and 2) daytime breaking and entering. They were indicted jointly with one Frank Albert Scungio and one Peter A. Costello, Jr., who were granted several trials.

The motion of each defendant herein for a new trial, supported by affidavits of counsel, was argued and submitted March 7, 1967. Each motion contains nineteen identical, separate grounds for a new trial. Of these, only five were urged in oral argument, and no memorandum was tendered, either before or after argument in support of the contentions of the defendants. Briefly stated, the five points argued were as follows:

1. Prejudicial error in attaching an alias as to each defendant named in the indictment.

2. Misconduct of the prosecuting attorney in making statements made in the opening statement when the evidence available fell short of proof thereof.

3. Error in the admission in evidence of certain state's exhibits.

4. Error in charging on aider and abettor.

5. Error in refusing to include in the general charge the subject matter of a special request to charge before argument submitted by the defense, dealing generally with the subject matter as to how the jury should treat the fact that the defendant Senzarino did not testify in his own behalf.

1. The oral argument of the defense was framed as if evidence of the use of various aliases by the defendants was offered by the state and actually received in evidence. Such is not the fact. There was no attempt by the state to prove that either defendant used some name other than his own as a means to hide his identity. The subject matter of which the defense here complains is the naming of the defendant Senzarino in the indictment also as "Senzario" and of the defendant Perod also as "Perrotta." The only plea entered by either defendant was "not guilty."

In the opinion of this court, this complaint falls clearly within the provisions of Section 2941.56, Revised Code, dealing with misnomer; and, at most, was the proper subject matter of a plea in abatement. No such plea was made. If it be conceded that this pleading in the indictment was an irregularity, certainly it is covered by Section 2945.83, Revised Code, and is not

a ground for the granting of a new trial. There was no evidence of a claimed use of an alias by either defendant. By such pleading, each defendant was neither prejudiced nor prevented from having a fair trial.

2. The claim of the defense is that because the prosecution in its opening statement stated in substance that the proof would show that the defendant Scungio registered at the Dukane Motel prior to the committing of this offense, but the proof offered showed that the defendant Senzarino and not Scungio, in fact, so registered but under the name of ''Granado'' is an indication of bad faith on the part of the prosecution at the time the statement was made, constitutes misconduct of counsel and warrants the granting of a new trial.

In the mind of this court, this argument is totally unsound. The rule is that failure to prove some fact claimed by the prosecution does not warrant a reversal on the ground that the defendant was denied a fair trial, unless the statement appears to have been made in bad faith and also was of such a nature in and of itself as to be manifestly prejudicial.

The statement complained of here was with reference to a circumstance which would place the defendant Senzarino in the vicinity of the crime a short time prior to its commission. There was other evidence admitted to show this same circumstance. It is most difficult to conceive how the statement of the prosecution in its opening in this respect is in any way whatsoever prejudicial to the defendant simply because the prosecution was unable to prove the statement during trial. The proof did show the association of Scungio and Senzarino, who in fact did so register.

The rule above set forth is supported by practically all of the authorities dealing with the question. The court sees no merit in the defense contention on this point. Reference is hereby made to *Wray* v. *State*, 5 O. C. C. (N. S.) 437; *Bruno* v. *State*, 15 Ohio Law Abs. 693; *Makley* v. *State*, 49 Ohio App. 359; *Rutledge* v. *State*, 15 P. 2d 255 (Ariz.); *Scott* v. *State*, 57 P. 2d 639 (Okla.); 15 Ohio Jurisprudence 2d 699; 53 American Jurisprudence 86; and 28 A. L. R. 2d 972.

Exhibits 2, 3, 35, and 36 were admitted in evidence over objection. These items, together with Exhibit 34, a pair of brown gloves, admitted in evidence without objection, were

found by the Chief of Police in a pile or lying together behind a tree approximately 300 feet south of the building where the crime was committed. Three separate state witnesses positively identified the defendant Senzarino as being one of four men they saw come out of the building and run south. Other persons, not identified, observed them drop some items behind this tree and turn and run east. These persons pointed out the items in question to the chief of police a very short time later.

The testimony with respect to what these unidentified persons said they had seen was offered through the chief of police and admitted without objection. After the admission of this testimony, the defense moved to strike out what these persons had told the chief of police. Having waited to see what answer the chief of police might give relative to conversations he had with these persons at this spot, and the question obviously calling for hearsay when put to the witness, the court ruled the objection was waived and overruled the motion to strike this testimony of the chief of police.

The three witnesses who saw the four men leave the building not only positively identified the defendant Senzarino as one of them, but also testified that two others were carrying colored handkerchiefs or bandanas and holding them up to their faces, and the fourth one was definitely wearing brown gloves. In the opinion of the court, this testimony sufficiently connected these exhibits to the defendants so as to make the items admissible in evidence.

4. Claim is made that the court erred in charging on the issue of an aider and abettor, and this for the reason that as to the defendant Perod in particular this was error because: 1) the defendants were charged in the indictment as principals, and 2) that there was no evidence to connect Perod to the crime before its commission.

Point 1 above mentioned, in the court's opinion, is totally without merit in view of the provisions of Section 1.17, Revised Code, ''any person who aids, abets or procures another to commit an offense may be prosecuted and punished as if he were the principal offender.'' Under this statute it long and consistently has been held that charging one in an indictment as if he were a principal will sustain proof that he acted as an aider and abettor of a principal. The form of the charge in the indictment

makes absolutely no difference. The cases in point on this question are so numerous and so one-sided as to require no citation of authority.

Point 2 above mentioned, in the court's opinion, is not sustained by the facts as shown by the evidence. There was testimony that Perod and Senzarino were together at the motel at the time of registering, that Perod left the motel with the others and drove away in a car, that he was seen with Senzarino and a third man peering from and running from a woods under suspicious circumstances toward the motel shortly after the commission of the crimes, that he was back in the motel with Scungio and Senzarino when he and Scungio were arrested, although Senzarino at that time made his escape. True, he was not identified as one of the four men seen coming from the building, but the above related evidence and other testimony not here recounted, was deemed sufficient to link the defendant Perod to the commission of the crimes, at least as an aider and abettor, if not as a principal.

5. At the close of the evidence, defendant in writing requested the court to charge the jury as follows:

"The failure of any defendant to take the witness stand and testify in his own behalf does not create any presumption against him; the jury is charged that it must not permit that fact to weigh in the slightest degree against any such defendant, nor should this fact enter into the discussions or deliberations of the jury in any manner."

The court refused to give any special charge before argument and refused to include the requested charge or the substance of it in the general charge which went to the jury in writing, at the request of the defense; but the court did charge as follows:

"On the trial of a criminal cause, a person charged with an offense may at his own request be a witness, but not otherwise. He cannot be compelled to testify. If a defendant testifies, his testimony is to be weighed by the same rules that apply to other witnesses, as heretofore instructed. You may not reject his testimony if you believe it to be true simply because he is a defendant."

The defense contends that such requested charge is commanded by the Fifth Amendment to the United States Consti-

tution under the holdings of *Griffin* v. *California*, 380 U. S. 609, 14 L. Ed. 2d 106, and *Bruno* v. *United States*, 308 U. S. 287, 84 L. Ed. 257, the same being the only authorities referred to by counsel in argument on the motions.

The Fifth Amendment provides:

"No person shall be held to answer * * *; nor shall be compelled in any criminal case to be a witness against himself, nor deprived of life, liberty or property, without due process of law; * * *"

The first eight amendments to the United States Constitution, known as the famous Bill of Rights, do not *ipso facto* apply to the states. This has always been so held. In *Barron* v. *Baltimore*, 7 Peters 240, decided by the United States Supreme Court in 1833, it was held in the opinion by Chief Justice Marshall:

"The provision in the fifth amendment to the Constitution of the United States, declaring that private property shall not be taken for public use without just compensation, is intended solely as a limitation on the exercise of power by the government of the United States, and is not applicable to the legislation of the States.

"The Constitution was ordained and established by the people of the United States, for themselves, for their own government, and not for the government of individual States. Each State established a constitution for itself, and in that constitution provided such limitations and restrictions on the powers of its particular government as its judgment dictated. The people of the United States framed such a government for the United States as they supposed best adapted to their situation, and best calculated to promote their interests. The powers they conferred on this government were to be exercised by itself; and the limitations on power, if expressed in general terms, are naturally and necessarily applicable to the government created by the instrument. They are limitations of power granted in the instrument itself, not of distinct governments framed by different persons and for different purposes."

See also *Burke* v. *State*, 104 Ohio St. 220; *Sheward* v. *State*, 117 Ohio St. 568. Further citation of authority on this point would simply be an overdose of authoritative reference. The complete dearth of authority to the contrary makes the point indubitably clear.

Through an ever increasingly liberal construction of the Fourteenth Amendment to the United States Constitution, however, the provisions of the Fifth Amendment and other sections of the Federal Bill of Rights have been made applicable to the states.

Section 1 of the Fourteenth Amendment provides as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the the equal protection of the laws."

The "action words," so to speak, of the provisions of Section 1, which are interdicted unto the states, should be carefully noted, "shall make or enforce," "shall abridge," "deprive," "deny."

It is important to keep in mind that the Federal Constitution is a grant of power to the federal government and not a limitation upon the otherwise reserved powers of the states, except as those otherwise reserved powers of the states are limited by the provisions of the Federal Constitution. This is explicitly provided by Article 10 of the Bill of Rights. The states do not derive their power to act, to govern, to restrict, to tax, to spend, to specify crime and provide for methods of conviction, and for punishment thereof from the Federal Constitution. They hold that power as an unalienable right, except as limited by prohibitions upon the powers of the states as contained in the Federal Constitution or as arise from a grant of an express power to the federal government contained in the Constitution or necessarily implied therefrom.

While the Bill of Rights contained in the first eight amendments are not limitations upon the powers reserved to the states, the Fourteenth Amendment nevertheless is a restriction upon state powers. Our entire system of criminal jurisprudence is based on the fundamental concept that it shall be "accusatorial and not inquisitorial" by nature, and that a man cannot be convicted "out of his mouth" save and except as his declarations are totally uncoerced and freely given. Prohibitions against

compelling a defendant to testify against himself are present in all state constitutions or legislative enactments or recognized as a fundamental right under the common law, as well as being set forth in the Fifth Amendment to the Federal Constitution. It must be conceded, therefore, that the right not to be a witness against oneself in a criminal case is a fundamental right which is protected against action by the federal government by the direct operation of the Fifth Amendment and against state action through the due process clause of the Fourteenth Amendment making the Fifth Amendment applicable by prohibiting the states from denying one of life, liberty or property without (or except by) due process of law.

Thus in *Malloy* v. *Hogan,* 378 U. S. 1, 12 L. Ed. 2d 653, the state court had committed the defendant for contempt for refusing to answer questions which the defendant claimed might tend to incriminate him, and ordered the defendant held in custody until he was willing to answer. The state court ruled that similar safeguards against self incrimination under state law and state constitution had not been properly invoked and further held that the Fifth Amendment was not made operative by the Fourteenth Amendment. The United States Supreme Court reversed. The court held: 1) That the Fourteenth Amendment makes the Fifth Amendment privilege against self incrimination applicable to the states; 2) The privilege if properly invoked in a state proceeding is governed by federal standards; 3) Judged by those standards, the petitioner's claim of privilege should have been upheld.

Habeas corpus was allowed. The decision was five to four. In my opinion, this decision is to be severely criticized, not so much because of making applicable the Fifth Amendment through the Fourteenth Amendment, as when, in the light of the fact situation in the case, the court said that "federal standards" were to be applied in determining whether the questions put, refusal to answer which was the basis of the incarceration, were or were not incriminating. The term federal standards was nowhere defined nor in any way outlined. The court simply proceeded to surmise that the questions might possibly tend to incriminate and did not otherwise explain the holding of the New Jersey court which found, as a matter of fact, they were not incriminating.

I think the decision of the bare majority is another illustration of the tendency toward federalism, desired by some and abhored by others, which is constantly creeping into every state action, even the defining of crime and providing the procedure and manner of punishment for conviction thereof.

Recognizing that this court must adhere (even if reluctantly) to the holdings of the United States Supreme Court on purely a federal constitutional question, I can accept the application of the Fifth Amendment through the operation of the Fourteenth Amendment so as to prohibit a state from "compelling a defendant to be a witness against himself in a criminal case." I cannot accept the "federal standards" concept of federalism as applied to all matters and certainly will not extend the doctrine of this case one bit further than is absolutely requisite. In other words, this court will not adopt a federal statute as a part of Ohio's criminal procedure law on the theory that it is part of a "federal standard" which is incumbent upon the states by operation of the Fourteenth Amendment, as the majority opinion in *Malloy* seemed to hold.

We should take note that the state action that was condemned by *Malloy* as being in violation of the Fifth Amendment through the operation of the Fourteenth Amendment was the incarceration of the defendant for the purpose of forcing him to testify. Once it is conceded—and I think properly so—that the right to be protected against self incrimination is one of the fundamental rights protected by the due process clause, state action of the kind taken in *Malloy* ought to be condemned. It is the remaining portions of that decision that are so disturbing to this court.

The defense relies on *Griffin* v. *California, supra,* decided April 28, 1965. Here the Constitution of California, like that of Ohio, allowed the defendant in a criminal case to testify at his own request but not otherwise, and also permitted his failure to testify to be made the subject of argument by the prosecution and the subject of an adverse charge by the court. The argument by the prosecution on the subject of the defendant's not testifying, the charge of the court permitting an unfavorable inference to be drawn therefrom by the jury, and the constitutional and statutory provisions which allowed this procedure were condemned by the Supreme Court as being in violation of

the Fifth Amendment through the operation of the due process clause of the Fourteenth Amendment.

The court reasoned that the "comment rule," as this procedure was referred to, actually amounted to a rule of evidence that allowed the state the privilege of tendering to the jury for its consideration the failure of the accused to testify, and that the prosecutor's comment and the court's approval of it by a charge in reference thereto were the equivalent of an offer of evidence and the acceptance thereof. It further reasoned that the comment rule was a penalty imposed by courts for exercising a constitutional privilege, that it effectively cut down on the privilege by making the assertion of it costly.

In answer to the argument that an inference of guilt for failure to testifying concerning facts shown to be peculiarly within the accused's knowledge was natural and irresistible and that the comment rule did not magnify the inference into a penalty for asserting the constitutional privilege, the court said, "What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him, is quite another."

Note here the state action which was condemned by the dedecision, namely, the arguing of the prosecutor, the charge by the court, and the enactment of constitutional and statutory provisions, the effect of which was to "deny one of life, liberty or property" within the meaning of the Fourteenth Amendment.

Did the court err in refusing to charge as requested by the defense? It should be kept in mind that Perod testified and Senzarino did not. Note that the requested charge was not pointed to a cautionary instruction against the jury's presuming the guilt of the defendant Senzarino solely from his failure to testify, but rather the request would have demanded the jury not to consider the failure to testify for any purpose whatsoever, which would include, of course, the matter of weighing the evidence of the state.

It is incredulous to reason that competent, pertinent, believable testimony and logical inferences from proven facts will not more readily be acceptable by the jury as true if the same are not contradicted by opposing testimony or explained by other evidence. Of course they will be and naturally so. But is the defendant entitled by law to the charge which he requested?

This court holds that he is not. Admittedly, the state Legislature could enact such a statute but Ohio has no such statute. A statute of this general nature requiring a charge to the effect that failure to testify alone creates no presumption against a defendant is in force in several states and there is a federal statute to the same effect. See cases in 48 L. Ed. 308, U. S. C. A. Title 18 Section 3481.

The defense relies on *Bruno* v. *United States, supra,* as authority for the proposition that it was mandatory on the court to give the requested charge, or at least the substance of it. In *Bruno* the court not only denied the specific request but refused to charge on the subject matter at all in any way.

In granting a new trial, the Supreme Court pointed out that since Congress coupled the privilege of an accused being given the right to testify (and it ought to be kept in mind that he did not have this right at common law) with a right to have his failure to testify made the subject of charge to the jury, failure to charge in accordance with statute was prejudicial error.

The court, in *Bruno,* did not approve the requested charge verbatim. What the court did hold was that because of the federal statute, the substance of the requested charge should have been given. *Bruno,* therefore, is not authority for the giving of this particular charge, even under the federal statute. In *Michael* v. *United States,* 7 F. 2d 865, the defendant did not testify, made a request for an appropriate instruction under the federal statute, which was given, and the court in addition thereto charged in substance that the failure to testify did not in any way destroy or impair the effect of uncontradicted facts. In other words, in this case, the court limited the charge called for by the federal statute on the matter of presumption of guilt so as not to interfere with the weighing of the evidence by the jury. The charge requested by the defense in the present case would have done just the opposite.

The same general proposition as in *Bruno* is true in each of the cases found in the annotation at 84 L. Ed. 308. In other words, if there is a statute which so demands, failure to charge on the subject matter, at least when a request therefor has been made, is prejudicial error. This is a sound principle with which no one would quibble.

It is quite another thing, however, to say that in the ab-

sence of a state statute such a proposed charge must be given. No authority has been cited therefor and the court could find none which hold or indicate in the slightest degree that such a charge is a fundamental right which if denied by a state court could be said to be a denial of due process of law, within the meaning of the Fourteenth Amendment. There is no such command in the Fifth Amendment or elsewhere in the Bill of Rights.

If the obligation to so charge is a right created by statute only, and that I do so hold, then there is no federal constitutional question involved. The Fourteenth Amendment does not make the federal criminal procedural statutes applicable to state trials on any theory that without same or their equivalent in state statutes there is a denial of due process of law. This just cannot be.

The defendant Senzarino would place his claimed absolute right to have the court charge as requested on the same plane as his right not to have the court charge, as was formerly done under our state Constitution and enabling statute, and also in California, but now denied by the rule of *Griffin.*

The advocacy advanced, so far as the jury is concerned, would place defendant Senzarino, who did not testify, in a more advantageous position than Perod, who did testify. In weighing the evidence, the jury was entitled to consider Perod's interest in the outcome of the prosecution, what he said and how he said it. The requested charge would have required the jury to totally disregard the obvious, that certain facts shown by the state's evidence to be within the knowledge of Senzarino were not denied by him.

The rights secured by the Constitution were won only by great sacrifice; they have not been maintained through the years without sacrifice, and they will not be assured to the future without further sacrifice. In life, some price or cost or sacrifice must be paid for the rights and advantages which we enjoy and the infringements we commit. So it is with a defendant in a criminal lawsuit. He must expect to pay the normal, nominal, ordinary going cost of asserting any right assured him, such as the risk that the jury may more readily believe certain testimony if it is not denied. Psychologically, it is probably true that ''failure to deny hurts.'' If so, that is part of the price

that must be paid for choosing not to testify. Certainly a defendant ought not to be allowed to forge his shield of protection against self incrimination into an offensive weapon with which to riddle the case made against him. This in effect would be attaching a premium to the right to remain silent.

The holding in *Griffin* does not so command. This court will not adopt the federalism and "federal standards" theory of *Malloy* so as to make applicable the federal statute (Title 18, Section 3481). There is no Ohio statute of similar import. Therefore, the requested charge did not call attention of the court to a mandatory requirement under state law. The giving of such a charge or even the substance of it is not a fundamental right secured by the due process clause of the Fourteenth Amendment. Therefore there was no denial of due process in refusing it. Such refusal is not in any way compelling a defendant to be a witness against himself in contravention of the Fifth Amendment. So again, there is no violation of the Fourteenth Amendment.

Tersely stated, in the absence of statute so commanding, the rule of *Bruno* is not applicable, the "federal standards" rule of *Malloy* will not be adopted, nor the rule of *Griffin* stretched with an additive as urged by the defense.

In conclusion, the court finds no prejudicial error with respect to any one of the five grounds urged by the defense upon the hearing of the motions for new trial and each of same will be overruled with exceptions noted.