786 F.2d 1163
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ELMER CANTRELL, Petitioner-Appellant
v.
FRANK GRAY, Respondent-Appellee.
 84-3686
 United States Court of Appeals, Sixth Circuit.
 2/7/86
 
 N.D.Ohio
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: LIVELY, Chief Judge; WELLFORD, Circuit Judge; and PORTER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner Elmer Cantrell appeals from an order of the district court denying his request for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. Petitioner asserts on appeal eleven grounds for relief found by the district court to be without merit.
 
 
 2
 In 1982, petitioner was indicted by the Cuyahoga County Grand Jury on one count of aggravated robbery and six counts of felonious assault. Petitioner was acquitted of the felonious assault charges, but convicted of aggravated robbery and sentenced to a term of imprisonment of from five to twenty-five years. On appeal, the Ohio Court of Appeals affirmed his conviction, and the Ohio Supreme Court dismissed his further appeal sua sponte for lack of a substantial constitutional question. Petitioner fairly presented all of the claims now presented in his federal habeas corpus petition to Ohio appellate courts.
 
 
 3
 The district court set out a synopsis of the relevant facts adduced at petitioner's trial, which we reiterate in substantial part. On the evening of January 9, 1982, Walter Ronald Jaraucaro, with his step-brother Bill Carroll and his friend Peter Clere, went to Rosie's Bar 67 to buy a sandwich for his wife. 'Ronnie', as he was known, ordered a beer for each of his companions, and then went to play a video game while the sandwich was being prepared.
 
 
 4
 Among the other customers in the bar that night were David Strickland and the petitioner, Elmer Cantrell. Peter Clere and Bill Carroll heard petitioner Cantrell tell Strickland that he didn't like one of them. Strickland offered to kill that person. Clere got up from the bar, walked over to Ronnie and told him that the two were talking about shooting someone. Ronnie told Clere to wait for the sandwich, left the bar and went outside to start up the van. Petitioner Cantrell became excited and started 'jumping around.' Strickland handed Cantrell a gun. Cantrell and Strickland followed Ronnie out of the bar.
 
 
 5
 Ronnie was in the van only thirty seconds when petitioner Cantrell and Strickland approached. Cantrell was yelling obscenities and ordering Ronnie out of the van. Ronnie complied. Cantrell pulled a small revolver from under his shirt and aimed it at Ronnie. Strickland then jumped in the van while Ronnie ran to the rearby house of his cousin, David Morris, and told him to call the police.
 
 
 6
 Meanwhile at the bar, Clere and Carroll picked up the sandwich. As they were walking out of the bar, petitioner Cantrell was walking in, stuffing the gun into his pants. Clere believed his brother was in danger and ran to catch up with the van. Strickland, however, was at the wheel. A fight ensued which caused the van to crash into a fence across the street from the tavern. Strickland fled. Clere then rejoined his brother and Bill Carroll.
 
 
 7
 While waiting at the Morris home for the police, they heard several shots fired into the house. Someone was shouting, threatening to kill everyone in the house. Because bullets were swirling wildly around the house, no one saw the attacker. Several witnesses testified that the voice was Elmer Cantrell's. Mrs. Morris testified for the defense that the voice was Strickland's. This testimony was not entirely consistent with what she told police. After the shooting stopped, David Morris ran outside and saw two males running past the hedges, one carrying a gun, and both proceeded into Cantrell's apartment. Shortly thereafter, the Cleveland Police found Strickland in Cantrell's bathroom and Cantrell in the attic.
 
 
 8
 Petitioner first argues that his due process rights were denied by the state trial court's refusal to permit the questioning of Clere, concerning his prior juvenile record. The trial judge based his ruling on Ohio Rule of Evidence 609(D) and Ohio Rev. Code Ann. Sec. 2151.358 (Page 1976 & Supp. 1984), which provide that evidence of juvenile adjudications is inadmissible except for sentencing purposes.
 
 
 9
 In Davis v. Alaska, 415 U.S. 308 (1974), the Supreme Court reversed a state conviction because the trial court refused to permit the defense to cross-examine a key state witness linking defendants to the crime about his prior juvenile adjudications and probation status. See also Alford v. United States, 282 U.S. 687, 693 (1931). In Stevens v. Bordenkircher, 746 F.2d 342 (6th Cir. 1984), this court reversed a district court's judgment and granted a conditional writ of habeas corpus to a petitioner who had been unable to fully cross-examine the principal government witness against him concerning criminal charges pending against the witness to elicit evidence of bias and motive. The court noted that
 
 
 10
 [i]n determining whether a trial court has abused its discretion in allowing only limited cross-examination as to motive, bias, or prejudice, a reviewing court must decide 'whether the jury was otherwise in possession of sufficient information concerning formative events to make a 'discriminating appraisal' of a witness' motives and bias.' United States v. Touchstone, 726 F.2d 1116, 1123 (6th Cir. 1984) (quoting United States v. Campbell, 426 F.2d 547, 550 (2d Cir. 1970)); United States v. Baker, 494 F.2d 1262, 1267 (6th Cir. 1974).
 
 
 11
 Id. at 346-47.
 
 
 12
 Under the particular facts of this case, we conclude that the district court did not err in its findings that Clere was not a key or crucial witness and that no facts have been alleged by petitioner suggesting that Clere was biased or had a motive for testifying favorably for the state, and thus the rule in Davis and Bordenkircher in inapplicable here. If we had determined this ruling to be error, we conclude that it would have been harmless error under all the circumstances, because the jury did learn that Clere had a prior juvenile offense, but not the details thereof.
 
 
 13
 Petitioner's next four assignments of error involve allegedly improper comments or questions by the prosecutor. In this respect we are guided by Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982) (en banc):
 
 
 14
 our Court has identified the factors we are to consider in weighing the extent of prosecutorial misconduct in habeas cases.
 
 
 15
 In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused.
 
 
 16
 United States v. Leon, 534 F.2d 667, 679 (6th Cir. 1976). However, even when reviewing prosecutorial misconduct on direct appeal, this Court has remarked:
 
 
 17
 More commonly, however, the complained-of conduct will not rise to reversible error, notably if it is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury [citations omitted]. Indeed, it is notable how often courts cite improper argument by a prosecutor and how seldom they reverse convictions because of it.
 
 
 18
 United States v. Bess, 593 F.2d 749, 757 (6th Cir. 1979) (emphasis in original).
 
 
 19
 Petitioner argues that the prosecutor impermissibly cross-examined petitioner concerning why he was not planning to produce his codefendant[1] to testify on his behalf. Over defense counsel's objections, the prosecutor questioned petitioner as to his reasons for failing to call his codefendant and suggested through cross-examination that petitioner's codefendant was 'right beyond the hall in the holding cell' if petitioner desired to call him.
 
 
 20
 The district court noted the prohibition on a prosecutor's calling to the jury's attention the failure of the defendant to testify, but observed that 'reversal is not required because of the prosecutor's comment on the defendant's failure to call a witness, so long as the statement cannot be construed as a comment on the failure of the defendant to testify. [Citations omitted.]' Since petitioner himself did testify, the district court concluded no error was committed. We agree.
 
 
 21
 In United States v. Blakemore, 489 F.2d 193, 196 (6th Cir. 1973), this court reversed a conviction on the basis of a prosecutor's comments during closing arguments on the defendant's failure to call four prospective witneses where a proper foundation and not been laid. The court laid out and discussed a two-part rule: 'An adverse inference is permitted from the failure of defendant to call witnesses if they are 'peculiarly within [his] power to produce' and if their testimony would 'elucidate the transaction.' Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621, 625 (1967).' Id. at 195. Although the prosecutor failed to lay a complete foundation for his cross-examination under Blakemore, the error, if any, constitutes harmless error. See Chapman v. California, 386 U.S. 18 (1967).
 
 
 22
 Petitioner's third claim of error is that the prosecutor improperly vouched for the credibility of a witness. The witness in question, Rose Grinzincic, was listed as a prosecution witness, but called by the defense when the state declined to call her. Petitioner particularly focuses on the prosecutor's explanation for failure to call the witness:
 
 
 23
 Mr. Mancino [defense counsel] was correct. I did not want her to come down here. I don't think she had anything to add. When the State and prosecutor puts on a witness in the case, I have to vouch for that witness' credibility. And I do not think that Rose is a credible witness and by putting her on the stand, I would have to say I believe her in this case and this witness' testimony is credible.
 
 
 24
 Although it is improper for a prosecutor to vouch for the credibility of a witness, the appropriate inquiry is "whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt.' Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982) (en banc).' Thus, 'the prosecutor should not, on the basis of claimed superior knowledge, endorse the veracity of a witness,' United States v. Davis, 487 F.2d 112, 125 (5th Cir. 1973), cert. denied, 415 U.S. 981 (1974). The district court found that the prosecutor merely commented on the witness' credibility in light of the record, which was proper. The trial judge instructed the jury of its role as the sole judge of witnesses' credibility, and that the attorneys' statements were not to be taken as evidence. We find no constitutional error under these circumstances.
 
 
 25
 Based on a review of the transcript, we find the prosecutor's comments susceptible of two interpretations--either that the prosecutor, knowing facts within and outside the record, consciously chose not to present this witness for credibility reasons or that the prosecutor failed to call the witness because she had nothing relevant to say. As noted in Angel v. Overberg, supra, '[i]f two plausible interpretations can be given to a prosecutor's ambiguous final argument, the court should not strive to adopt the one which casts doubt upon the prosecutor's intentions. cf. United States v. Trapnell, 638 F.2d 1016, 1025 (7th Cir. 1980).' 682 F.2d at 608.
 
 
 26
 Petitioner's fourth claim of error concerns the prosecutor's cross-examination of petitioner implying that petitioner had a prior felony record. Although petitioner answered 'no' to this question, he argues that the prosecutor lacked a basis for asking the question and that this constitutes grounds for reversal. We conclude that the district court did not err in ruling 'on this record, together with Cantrell's negative response to the question, that the prosecutor's question had no effect upon the jury verdict, and therefore was not prejudicial, but harmless.' See United States v. Wolf, 561 F.2d 1376, 1382 (10th Cir. 1977).
 
 
 27
 Petitioner's final argument of prosecutorial misconduct alleges that the prosecutor misstated the law on the issue of intoxication in closing argument. Petitioner essentially complains of the prosecutor's assertion that 'intoxication is not an excuse.' We find no error in the conclusion of the district court that the prosecutor's use of the non-technical term 'excuse', in the context of his argument to the jury, represented an argument from the evidence and was substantially in accordance with the court's instructions to the jury on the issue of intoxication.
 
 
 28
 Petitioner's next contention is that he was denied due process when the court's instructions to the jury required him to prove intoxication by a preponderance of the evidence. The jury instructions quite clearly explained to the jury that intoxication was an affirmative defense insofar as defendant could establish by a preponderance of the evidence 'that at the time in question he was so influenced by alcohol that he was incapable of forming a purpose or having the knowledge to commit the offense.' If the jury so found, the court instructed that it must find defendant not guilty. The court went on, however, to instruct that '[i]f the defendant fails to establish the defense of intoxication, the State must still prove to you beyond a reasonable doubt all the elements of the crimes charged,' including intent.
 
 
 29
 A state may constitutionally impose the burden of proving certain affirmative defenses upon a defendant so long as the state retains the burden of proving every element of the crime charged. See Mullaney v. Wilbur, 421 U.S. 684 (1975); Patterson v. New York, 432 U.S. 197 (1977); In re Winship, 397 U.S. 358 (1970). The district court correctly found that under Ohio law, intoxication is an affirmative defense which must be raised and proved by a defendant,[2] and the district court correctly found that the state trial judge clearly instructed the jury on Ohio law. Petitioner's contention accordingly fails to persuade us.
 
 
 30
 Petitioner's next assertion is that he was denied due process when the court gave aider and abettor instructions to the jury so as to permit his conviction based upon his codefendant's mental state. The instructions required, however, that in order to convict the petitioner the jury must find that he 'knowingly or purposely aided, helped, assisted, encouraged or directed or associated himself with another for the purpose of committing a crime,' and further instructions were given which emphasized that the intent in question must be petitioner's intent. The instructions were 'a correct statement of Ohio law,' and we find no merit in this contention.
 
 
 31
 Petitioner next argues that he was denied due process when he was charged as a principal offender but the jury was charged on aiding and abetting, and thus he could be convicted as a non-principal. The district court properly rejected this argument, noting that under Ohio
 
 
 32
 it long and consistently has been held that charging one in an indictment as if he were a principal will sustain proof that he acted as an aider and abettor of a principal. The form of the charge in the indictment makes absolutely no difference. The cases in print on this question are so numerous and so one-sided as to require no citation of authority.
 
 
 33
 (quoting State v. Senzarino, 10 Ohio Misc. 241, 224 N.E.2d 389, 393 (Ohio Ct. Common Pleas 1967)). Given the settled law of Ohio on this matter, petitioner was clearly given fair notice of the charges against him, including the charge of aiding and abetting. See Koontz v. Glossa, 731 F.2d 365, 370 (6th Cir. 1984); Blake v. Morford, 563 F.2d 248 (6th Cir. 1977), cert. denied sub nom. Blake v. Thompson, 434 U.S. 1038 (1978); Watson v. Jago, 558 F.2d 330 (6th Cir. 1977). See also Quigg v. Crist, 616 F.2d 1107, 1111 (9th Cir. 1980); Carothers v. Rhav, 594 F.2d 225, 229 (9th Cir. 1979).
 
 
 34
 Petitioner's additional contentions focus on claims that he was denied due process when the court refused to dismiss the aggravated robbery charge due to lack of evidence, because the evidence showed that he was so intoxicated that he could not form an intent to commit the offenses. Under the standard of Jackson v. Virginia, 443 U.S. 307 (1979), we conclude that the district court did not err in finding sufficient evidence to support a conviction of aggravated robbery despite a defense of intoxication.
 
 
 35
 Finally, petitioner claims error in that he was denied due process when the court refused to instruct the jury on the lesser included offense of theft. Given the strong evidence that petitioner threatened the victim of his crime with a gun, this claim does not state sufficient grounds for habeas corpus relief. See Pilon v. Bordenkircher, 593 F.2d 264 (6th Cir. 1979).
 
 
 36
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable David S. Porter, Senior U. S. District Judge for the Southern District of Ohio, sitting by disignation
 
 
 [1]
 Petitioner's codefendant, David Strickland, pled guilty
 
 
 [2]
 See state v. Humphries, 364 N.E.2d 1354, 1357 (1977); State v. Poole, 294 N.E.2d 888, 889 (1973); Ohio Rev. Code Ann. Sec. 2901.05 (Page 1982 & Supp. 1984) (burden of proof on affirmative defenses)