[Cite as *State v. Khalifa-El*, 2019-Ohio-38.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2018CA00020 |
| | : | |
| GHANI M. KHALIFA-EL | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:             Appeal from the Stark County Court of
                                     Common Pleas, Case No.
                                     2017CR1618A

JUDGMENT:                            AFFIRMED

DATE OF JUDGMENT ENTRY:              January 7, 2019

APPEARANCES:

For Plaintiff-Appellee:                   For Defendant-Appellant:

JOHN D. FERRERO                           DONOVAN HILL
STARK COUNTY PROSECUTOR                   116 Cleveland Ave. NW
                                          808 Courtyard Centre
KATHLEEN O. TATARSKY                      Canton, OH 44702
110 Central Plaza, South – Suite 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Ghani M. Khalifa-El appeals his conviction and sentence for Aggravated Trafficking in Drugs and Trafficking in Heroin by the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} On August 25, 2017, Detective Bob Rajcan of the Alliance Police Department, Special Investigations Unit, was informed by a Confidential Informant ("CI") that he received a text from Franki Jo Collins stating she had heroin to sell. Franki Jo Collins, wife of Defendant-Appellant Ghani M. Khalifa-El, was known to the police department and had recently been released from prison for drug crimes. Det. Rajcan agreed to finance the drug transaction.

{¶3} Det. Rajcan and the CI prepared for the controlled drug buy. The CI was first searched by the police to make sure he did not possess any drugs or drug paraphernalia. Det. Rajcan provided the CI with a syringe to give to Collins. It was known that Collins would strip search the CI before the transaction, so the CI was fitted with an audio recorder around his ankle, instead of using a video and audio recorder. Det. Rajcan gave the CI $120.00 in cash, which was previously photocopied for later identification. A surveillance team was assigned to monitor the drug transaction.

{¶4} Collins told the CI to come to a location on West Main Street, Alliance, Ohio, near a corner market called Korosy's Korner. The location was adjacent to the residence Collins shared with Khalifa-El. Det. Rajcan parked in the apartment's parking lot to monitor the buy. Det. Rajcan was wearing a point-of-view camera to record what he was

able to see of the drug transaction. Lieutenant Don Wensel was positioned nearby to pick up the CI after the buy and transport any collected drugs to the police station.

{¶5}   After being prepared for the drug buy, the CI met Collins at the Korosy's Korner store. Collins took the CI to the back of the nearby apartment building where she checked him for a wire. She did not discover the audio recorder on the CI's ankle. Collins instructed the CI to go to the basement laundry room of the apartment building on West Main Street. She told the CI the heroin would be in a sink in the laundry room. The CI was to leave the money in the sink.

{¶6}   The CI went to the basement laundry room and Collins waited in front of the apartment building. In the laundry room, the CI did not see any heroin in the sink. The CI started to walk up the stairs to tell Collins the heroin was not there when he saw Khalifa-El:

A. She said, Go down in the basement and the heroin is going to be in the sink. And I was to put the money there, grab it and leave. Well, it wasn't there. So I started to go back up to tell here it wasn't there and that's when Meech – I don't know his name.

Q. Is Meech – is the Defendant the person you referred to as Meech?

A. Yeah, I don't know his name. And he was standing down in the basement as I was going back up to tell Franki that the heroin wasn't there. But when he seen me and stopped me, he's like, Did she take care of you? Meaning did she give me the heroin. I was like, No. And he's like, That's because I put it – he had moved it. He said he moved it. I put it right there. It was on

the stairs. And he told me to go put the money in the sink and grab the heroin.

(T. 315-316).

{¶7} The CI put the money in the sink, took the heroin from the stairs, and left the building. He was picked up by Lt. Wensel, who had the CI place the drugs on the floor of the car. The CI and the drugs were transported back to the Alliance Police Department.

{¶8} Det. Rajcan observed Khalifa-El leave the apartment building and walk with Collins to their residence. Det. Rajcan returned to the police department where he field-tested the retrieved drugs, which tested positive for heroin. Later that day, Khalifa-El was arrested by the Alliance Police Department. Khalifa-El admitted to being in the basement of the apartment building, but claimed he was there to see if the coin-operated washing machine worked because the dryer in his apartment building was broken.

{¶9} The recovered drugs were tested by the Stark County Crime Lab. The drugs were determined to contain heroin and U-47700. U-47700 is a Schedule I controlled substance.

{¶10} On October 20, 2017, Khalifa-El and Collins were indicted by the Stark County Grand Jury for their activities on August 25, 2017. The indictment charged Khalifa-El with one count of Aggravated Trafficking in Drugs, a fourth-degree felony in violation of R.C. 2925.03(A)(1)(C)(1)(A), and one count of Trafficking in Heroin, a fifth-degree felony in violation of R.C. 2925.03(A)(1)(C)(6)(A). The indictment alleged that Khalifa-El either committed the crimes himself and/or aided or abetted another in so doing. Khalifa-El entered a plea of not guilty to both charges.

{¶11} Khalifa-El was appointed trial counsel. The matter proceeded to a jury trial where Khalifa-El elected to proceed pro se and trial counsel was placed on stand-by. The jury returned a verdict of guilty on both counts.

{¶12} The trial court merged the offenses for sentencing purposes. The trial court sentenced Khalifa-El to 17 months in prison.

{¶13} It is from this judgment Khalifa-El now appeals.

## ASSIGNMENT OF ERROR

{¶14} Khalifa-El raises one Assignment of Error:

{¶15} "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

## ANALYSIS

{¶16} Khalifa-El contends in his sole Assignment of Error that his convictions were against the manifest weight and sufficiency of the evidence. We disagree.

{¶17} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the

evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶18} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶19} Khalifa-El was convicted of violating R.C. 2925.03(A)(1)(C)(1)(a), which states in pertinent part, "No person shall knowingly do any of the following * * * sell or offer to sell a controlled substance or a controlled substance analog * * * [i]f the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, * * *, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs." Khalifa-El was also charged and convicted of violating R.C. 2925.03(A)(1)(C)(6)(a), which states in pertinent part, "No person shall knowingly do any of the following * * * sell or offer to sell a controlled substance or a controlled substance analog * * * [i]f the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin."

{¶20} Khalifa-El argues in his appeal that the evidence presented by the State was contradictory and insufficient to meet the elements of aggravated trafficking in drugs and trafficking in heroin. Khalifa-El points to the testimony of Det. Rajcan to show there was an absence of direct evidence that Khalifa-El was engaged in trafficking or aided or abetted another in so doing. Det. Rajcan did not see Khalifa-El during the alleged transaction. The drugs allegedly obtained from the drug transaction were not tested for DNA or fingerprint evidence. While Det. Rajcan arrested Collins and Khalifa-El shortly after the alleged transaction, the police never recovered the photocopied money used in the transaction. There was no evidence presented that Khalifa-El was not permitted to be in the basement laundry room. The State's primary fact witness, the CI, had a criminal record and a history of drug use.

{¶21} R.C. 2923.03 provides:

(A) No person, acting with the kind of culpability required for the commission

of an offense, shall do any of the following

* * *

(2) Aid or abet another in committing the offense.

{¶22} R.C. 2923.03(F) further states:

Whoever violates this section is guilty in the commission of an offense, and

shall be prosecuted and punished as if he were a principal offender. A

charge of complicity may be stated in terms of this section, or in terms of

the principal offense.

{¶23} Here, Khalifa-El was indicted for trafficking of drugs and heroin in terms of the principal offenses and/or aiding or abetting another in so doing. By virtue of R.C.

2923.03(F), Khalifa-El was on notice that evidence could be presented that he was either a principal offender, or an aider and abettor. *State v. Polite*, 5th Dist. Stark No. 2017 CA 00129, 2018-Ohio-1372, 2018 WL 1747931, ¶¶ 56-58 citing *State v. Dotson* (1987), 35 Ohio App.3d 135, 138, 520 N.E.2d 240, 244. Even if the aiding and abetting language was not included in the indictment, charging a defendant in an indictment as if he were a principal will sustain proof that he acted as an aider and abettor of the principal. *Id.* citing *State v. Senzarino* (C.P.1967), 10 Ohio Misc. 241, 39 O.O.2d 383, 224 N.E.2d 389; *State v. Smith* (Mar. 25, 1988), Allen App. No. 1–85–48, unreported, 1988 WL 32979.

{¶24} Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981), citing *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *Id.* at 150, 3 OBR 163, 444 N.E.2d 68. *See State v. Trocodaro*, 36 Ohio App.2d 1, 65 O.O.2d 1, 301 N.E.2d 898 (10th Dist.1973); *State v. Lett*, 160 Ohio App.3d 46, 52, 2005–Ohio–1308, 825 N.E.2d 1158, 1163 (8th Dist.).

{¶25} The State presented evidence that Khalifa-El actively participated and/or aided or abetted in the drug transaction. Collins directed the CI to the basement laundry room to pick up the drugs and leave money in the laundry room sink. Khalifa-El was in the basement laundry room when the CI went there as directed. Khalifa-El admitted to being in the laundry room at the time the CI was there. The CI testified Khalifa-El asked him whether he was taken care of, told him to leave the money in the sink, and directed

the CI to the steps where the CI found the drugs. On cross-examination, the CI did not waver from his description of his interaction with Khalifa-El in the basement laundry room. The CI left the basement laundry room with drugs that were immediately collected by the police and tested positive for heroin and U-47700.

{¶26} The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State* v. *McGregor,* 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 2942992, ¶ 10. In this case, the jury believed the testimony of Det. Rajcan and the CI that Khalifa-El was in the basement laundry room as an active participant and/or aided or abetted in trafficking of heroin and drugs.

{¶27} Based on our review of the record, we find Khalifa-El's conviction was not against the sufficiency or manifest weight of the evidence.

{¶28} His sole Assignment of Error is overruled.

**CONCLUSION**

{¶29} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.