THE STATE OF OHIO, APPELLEE, *v.* TROCODARO, APPELLANT.

(No. 73AP-24—Decided May 22, 1973.)

APPEAL: Court of Appeals for Franklin County.

*Mr. George C. Smith,* prosecuting attorney, *Mr. Miles C. Durfey,* and *Ms. Judi Smith Solon,* for appellee.
*Mr. Roy F. Martin* and *Mr. William Lazarow,* for appellant.

HOLMES, J.   This is an appeal from a conviction of first degree murder entered by the Court of Common Pleas of Franklin County.   The matter was submitted to the court following a waiver of the jury by the defendant, appellant herein.   The waiver was given with the knowledge and approval of the defendant's legal counsel.

The facts upon which this conviction was based clearly evidence one of the most cold blooded acts of murder that the writer of this decision has had the unpleasant duty to review upon appeal.

The facts, in brief, are that the defendant-appellant, in company with two other men, a Robert Laws and a Robert Latham, did, on the night of October 21, 1971, proceed in Latham's automobile to the east side of Columbus—more specifically, to Tom's Steak House on East Fifth Avenue.

The expressed purpose of such trip was to observe such place of business, determine who the manager might be, and then proceed to effect a robbery of the business, or the manager.

The record shows that both this defendant-appellant and Laws were armed with hand guns, and there was no suggestion in the evidence that either man had brought along such firearms for other than an unlawful purpose.

After arriving at Tom's Steak House, the trio lay in wait on the outside of the building for the emergence of one whom they might deem to be the manager.   Instead, the deceased, Mrs. Jean B. Smith, who the trio mistook for the manager, emerged from the restaurant.

When Mrs. Smith left the parking lot driving her automobile, the trio followed in Latham's car to a certain roadway some distance north of the steak house, and at the opportune moment passed Mrs. Smith's car and stopped immediately in front of it, causing her to stop also.

Appellant and Laws proceeded back to Mrs. Smith's car, opened the door and forced their way inside.   Laws took the wheel and ordered Mrs. Smith into the rear seat with the defendant.

Laws then proceeded to drive to a dead end street while appellant was removing the rings from Mrs. Smith's

fingers. The auto stopped at a place where there was an open field, and Laws told the appellant to shoot Mrs. Smith because she had recognized Laws. Appellant responded that he "didn't want to shoot the lady." During such conversation, Mrs. Smith was begging these men for her life.

Thereupon, Laws stated that he was going to take Mrs. Smith out into the field, tie her up and knock her out. Latham and appellant testified, however, that there was no rope or line present with which to tie Mrs. Smith.

Laws proceeded to march Mrs. Smith into the weed-filled area of the vacant lot while the other two men remained at the car. A few moments later, the two at the car heard two shots, which were followed by the singular reappearance of the murderer, Laws.

Mrs. Smith's body was found on October 24, 1971, by residents of the area. An autopsy of the victim revealed that the cause of her death was two gunshot wounds to the area of the brain.

On December 8, 1971, Latham was brought to the detective bureau for questioning in connection with a series of robberies and shootings. In an interview with Detective Verne, Latham related information concerning numerous robberies, abductions, rapes, and aggravated assaults in which he as well as Laws and this defendant-appellant were involved.

Latham volunteered information concerning the homicide of Mrs. Smith, implicating the appellant, Robert Laws and himself, and establishing the first connection between these men and this crime. In return for his agreement to testify for the state against appellant and Laws, Latham was apparently promised immunity for this particular offense by the police officer and the prosecutor's office.

On December 10, 1971, appellant was arrested, advised of his rights and questioned by the police. He made a voluntary statement, recorded by a stenographer, which implicated him in a series of robberies and also in the murder of Mrs. Smith. The appellant was indicted by the Franklin County Grand Jury on the count of murder in the

4

first degree under R. C. 2901.01. While the evidence reflects the fact that Laws fired the fatal shots, the appellant was brought to trial as an aider and abettor under the authority of R. C. 1.17.

The trial began before a jury. At the close of the state's case, defense counsel moved for a dismissal, and the motion was overruled by the court. The defense put on a ballistics expert to prove that the gun which the appellant had brought along the night of the murder had not been the gun that had actually been used in the murder.

Thereafter, the defense rested, and the court, in the absence of the jury, reviewed proposed instructions to the jury and discussed the intended charge with both counsel.

The trial record shows that the court stated to counsel: "[At the request of the defendant the court will charge on] the elements of murder in the first degree and also on the element of aiding and abetting as to this defendant, which will be considered by the jury if they find that the person who shot and killed Jean Smith committed murder in the first degree * * *."

The prosecutor then submitted the following special instruction for the court's consideration:

"Where only such unlawful act was contemplated in the original conspiracy, although not identical with or similar to the criminal act charged, if the conspired unlawful act and the manner of its performance would be reasonably likely to produce death, each conspirator is equally guilty with the principal offender, as an aider and abettor in the homicide, although such aider and abettor was neither present nor had knowledge of the physical killing or of the weapon used. *The State of Ohio* v. *Doty*, 94 Ohio St. 258."

The trial court, in refusing such instruction, stated: "The Court feels that it cannot give the request for the reason that it is based upon 'the original conspiracy' * * *."

Further, the court stated: "The Court feels that the only charge under these facts the Court can submit to the jury is the question as to whether or not this Defendant aided and abetted in the act which resulted in the killing of Jean Smith * * *."

Thereafter, as stated, the appellant voluntarily waived and relinquished the right of a further consideration of the case by a jury. The trial court, after considering the matter, found the appellant, to have been an aider and abettor and to be guilty of murder in the first degree.

I

The appellant's first assignment of error is as follows: "The trial court erred in denying defendant's motion to dismiss at the close of the state's case in that there was no evidence to convict, hence said ruling denied defendant due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution."

The supporting proposition for such assignment of error is that "in prosecuting on indictment of murder with premeditation and malice aforethought, the state must produce some evidence of intention to kill in order to maintain their case."

Stated another way, the appellant contends that where a crime requires the existence of a particular intent, an alledged aider and abettor cannot be held as a principal unless it is established that the aider *knew* that the perpetrator of the act had the required intent.

The appellant was indicted and tried for murder in the first degree, pursuant to R. C. 2901.01, together with Laws, the man who actually fired the gun that killed Mrs. Smith. Such indictment and prosecution was pursuant to the aider and abettor statute of Ohio, R. C. 1.17, which section is as follows:

"Any person who aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender."

The key question to be answered by the trier of the facts within the fact situation presented here is whether or not this defendant-appellant aided and abetted in the act of homicide upon Jean Smith.

As stated in 15 Ohio Jurisprudence 2d Rev. 314, Criminal Law, Section 52: "To 'aid' means to help to assist, or to strengthen; to 'abet' means to encourage, to counsel, to incite, or to assist in a criminal act * * *."

The Ohio statute makes the crime of advising, aiding

or abetting in a crime an independent offense. The advisor, aider or abettor is declared to be guilty of the same offense and is made liable to the same kind of punishment.

One may be found to be an aider and abettor in the commission of a crime even though he was not actually present at the time the crime was committed; such presence may take the form of constructive presence. Examples of such are drivers of vehicles used in perpetrating crimes, *State* v. *Palfy* (1967), 11 Ohio App. 2d 142; *Collier* v. *State* (1932), 12 Ohio Law Abs. 713; lookouts during the commission of crimes, *Breese* v. *State* (1861), 12 Ohio St. 146; and persons who set up certain schemes for obtaining entry by others into premises which are sites of criminal acts, *Stephens* v. *State* (1884), 42 Ohio St. 150; *Breese* v. *State, supra.*

It is true that in the absence of evidence of a conspiracy one may not be held as a principal if he is merely present during the commission of a crime, where he has not procured, encouraged or participated in such crime, *Gallo* v. *State* (1928), 6 Ohio Law Abs. 588 (a "rooter" at a drag race). Also, in the absence of a conspiracy or some preceding connection with the transaction, one does not aid and abet if he merely sees a crime being committed, *Smith* v. *State* (1931), 41 Ohio App. 64.

Additionally, unless one is in pursuance of a conspiracy previously formed, his involvement in an altercation which although connected with, is not the specific altercation occasioning, a homicide should not be held as a principal under the theory of aiding and abetting, where he has neither actually incited, nor encouraged the perpetrator of the homicide. In this regard, we find the following syllabus in the case of *Woolweaver* v. *State* (1893), 50 Ohio St. 277:

"1. A person who becomes involved in a fight with one or more antagonists, should not, upon that ground only, be held an aider and abettor of another, who may be present, and incited by the struggle commits an independent act of violence, that causes the death of the antagonist, or one of them, if there were more than one.

"2. In such case, to constitute the person engaged in the fight, an aider or abettor of the homicide, it should appear, either, that there was a prior conspiracy, or that he purposely incited or encouraged the slayer, or did some overt act himself, with an intent to cause the death of his antagonist."

We find on the general subject of the required intent of an aider and abettor in order to hold him as a principal, the following comments in 21 American Jurisprudence 2d 199, Criminal Law, Section 123:

"Where a crime requires the existence of a particular intent, an alleged aider or abettor cannot be held as a principal unless it is established that the aider knew that the perpetrator of the act had the required intent, or that the aider himself possessed the required felonious intent." Citations were made to *Coffin* v. *United States*, 162 U. S. 664, and *Woolweaver* v. *State*, 50 Ohio St. 277.

The article further states: "If the intent of the aider is different from that of the perpetrator, the aider's guilt is measured by the intent that actuated him, though this may result in making him liable for a graver offense."

However, such principle, as pointed out by the court in *Woolweaver, supra,* is applicable in the absence of a showing of a criminal conspiracy. At page 288 in the opinion, the court stated as follows:

"* * * *If there was no prior conspiracy,* and the act was committed upon a sudden quarrel, without the plaintiff in error having purposely incited or encourged the perpetrator thereof, he ought not to be held to have a guilty connection therewith, unless he did some overt act 'with a view,'—that is for the purpose—to produce the result he is charged with aiding and abetting, for in such a state of fact no criminal intent would exist. * * *" (Emphasis ours.)

We hold that where, as here, there has been found to be a criminal conspiracy, it need not be proved that an aider or abettor also possessed those individual elements needed to establish the crime against the perpetrator of the act.

Where there is a criminal conspiracy or common de-

sign to commit a crime, the act of one of the conspirators is the act of all of such conspirators, and a participant therein may, under the facts of the case, be considered either, or both, a conspirator and an aider and abettor.

As stated in 15 Ohio Jurisprudence 2d Rev. 320, Criminal Law, Section 58:

"Where two or more persons enter upon the execution of a common criminal enterprise, what each does in the execution of the common purpose is the act of all, and if another crime is committed by one of them in attempting to accomplish the common criminal purpose, any one of them thus aiding and abetting is equally guilty of the crime with the one who did the act, if such aider and abettor intended that the crime should be committed if necessary to accomplish the common criminal purpose."

Continuing, the article in the foregoing text states, at 320, Section 58:

"The rule goes even further—that is, the aider and abettor is criminally responsible for any act done in furtherance of the common criminal enterprise, whether intended by him or not, if such act might have been reasonably contemplated by him as probable or likely to result from an attempt to commit the crime intended; or as otherwise stated, he is bound by the consequences naturally or probably arising in its furtherance, and in case of death is guilty of homicide. * * *'' Citing *Stephens* v. *State* (1884), 42 Ohio St. 150; *State* v. *Strong*, 12 Ohio Dec. (*N. P.*) 698; *State* v. *Doty* (1916), 94 Ohio St. 258.

It was an issue for the trier of the facts whether or not the defendant was an aider and abettor. It was also within the province of the trier of the facts to determine the presence of a conspiracy.

In the instant case, I believe it perfectly appropriate to view the circumstances as constituting a conspiracy or a common criminal enterprise, or enterprises. In the first instance, there was the common criminal enterprise to rob the manager of the restaurant. Such enterprise never materialized in that the conspirators did not apprehend the manager. Instead, the conspirators abducted the wrong

party. Once the wrong woman, Mrs. Smith, had been abducted, there were acts of armed robbery committed upon her by defendant, and at the termination of the fateful drive to the all too literal dead end, Laws determined, and expressed the fact, that Mrs. Smith was to die. At first he asked the defendant to do the dastardly deed, but upon the refusal by the defendant, Laws proceeded with gun in hand to take Mrs. Smith into the vacant field, and carried out his previously expressed desire to have her annihilated.

The facts show that the appellant was aware of, and participated in, the stopping and the abduction of Mrs. Smith. He personally stripped the rings from Mrs. Smith's fingers. He personally was armed with a gun, and he knew that Laws also had a gun in his possession. He knew that Laws wanted Mrs. Smith murdered in that Laws had requested defendant to commit such an act. He knew that when Laws took Mrs. Smith into the field, ostensibly to tie her up, Laws had no rope or line to effect such tying.

There can be little doubt as to the elements of purposefulness, and premeditated maliciousness of Laws. However, short the amount of time that was involved in his thought process, he meant to do what he did.

Even in the absence of a conspiracy, as found by the trial court and this court, the facts of this case would strongly suggest that the defendant *knew* that the perpetrator of the act had the required criminal intent, and the defendant could accordingly be held as a principal in this criminal act.

In any event, the trial court did not err in finding that the appellant was involved in a criminal conspiracy, and that he was, in fact, an aider and abettor in the murder.

The first assignment of error is therefore without merit

II

Appellant argues a very interesting issue in assignment of error number two. Such assignment charges that the trial court should have, upon a pretrial motion, dismissed the charge against this defendant, in that one of the accomplices in the murder, Robert Latham, was given

10

immunity by the state on the promise that such accomplice would testify against appellant.

Appellant contends, quite effectively, that the granting of such immunity to one of a number of participants in this crime treats this defendant unfairly, contrary to the equal protection clause of the Constitution of the United States.

At the outset of this limited discussion, I am constrained to state that selectivity in the enforcement of our criminal statutes is an activity which may be subject to grave and sometimes unconstitutional abuse, and must be pursued with the greatest degree of concern and with an attendant weighing of the relative merits of proceeding against those selected as opposed to proceeding against all of those who might be guilty of a crime or crimes under investigation or indictment.

In Ohio, where a criminal investigation has resulted in an indictment, a *nolle prosequi* to such an indictment must be with leave of court upon a recommendation by the prosecuting attorney. See R. C. 2941.33.

A prosecutor is without power to *nolle pros* an indictment. Such may only be done by the court upon the recommendation of the prosecutor. *Chenault* v. *McLean* (1933), 48 Ohio App. 284.

R. C. 2945.15 also provides that the trial court may, before the defendant has gone into his defense, discharge such defendant so that he may be a witness for the state.

However, there is no statute and no reported case law in Ohio concerning the authority of the prosecutor to selectively enforce the criminal laws in situations where one or more of those being investigated may be promised immunity from prosecution, in return for their testifying for the state.

In the absence of statute, no one has a general immunity from prosecution for his alleged criminal acts. *Beal* v. *Missouri P. R. Corp.* (1941), 312 U. S. 45.

It would appear from a review of the authorities in other jurisdictions, however, that immunity as granted by the state in certain instances has been approved by the courts, as necessarily serving a valid purpose of the state.

In 21 American Jurisprudence 2d 216, Criminal Law, Section 147, we find the following:

"However, even in the absence of specific statutory authority, there is an established practice in American courts not to prosecute an accomplice who has testified for the government in the expectation of immunity from prosecution, and such a witness is said to have an equitable claim to immunity from prosecution. Where the case is not within any statute, the general rule is that if an accomplice, when examined as a witness by the public prosecutor, discloses fully and fairly the guilt of himself and his associates, he will not be prosecuted for the offense disclosed, but he cannot plead such fact in bar of any indictment against him or avail himself of it on his trial, since it is merely an equitable right to the mercy of the executive and can only come before the court by way of application to put off the trial in order to give the prisoner time to apply to the executive for that purpose."

The decisions of the reviewing courts as to whether the prosecutor may, in the absence of a prior approval by the court, grant or agree to any such immunity seems to be guided or controlled by specific or related statutes.

As stated in 21 American Jurisprudence 2d 221, Criminal Law, Section 156.

"In states in which a prosecuting attorney may enter a nolle prosequi without the consent of the court, he may grant a witness immunity from prosecution by contract without approval of the court. Generally, however, a district or prosecuting attorney has no authority without the court's advice or consent to make a binding agreement or contract that if a person charged with an offense will testify against others, he shall be exempt from all criminal liability. * * *"

As stated, Ohio has a section of law dealing with the entering of a *nolle prosequi* which requires court approval therefor, and there is a statute which provides for the dismissal of an action, by court order, where the accused offers testimony on behalf of the state. It would thus appear that the general pattern has been established.

It would also appear, therefore, that in order for an

agreement offering immunity to be binding upon the state, court approval should be procured.

However, as stated previously, where testimony has been given in expectation of immunity from prosecution, the accomplice should be afforded an equitable right to such immunity.

Here, the third party accomplice has given such testimony with the understanding that immunity would be granted, and even though we have stated that the procedure should have entailed the approval of the trial court, we are not disposed to find that the absence of such approval would require the trial court on the pretrial motion of this defendant to dismiss the charge against him upon the constitutional basis of unequal treatment.

A review of the federal cases in this regard would indicate that a reasonable degree of latitude is permitted the state relating to a "reasonable selectivity in enforcement." Justice Burger, then sitting on the federal circuit court in the District of Columbia, wrote, in *Newman* v. *United States* (D. C. Cir. 1967), 382 F. 2d 479, 481, as follows:

"To say that the United States Attorney must literally treat every offense and every offender alike is to delegate him an impossible task; of course this concept would negate discretion. Myriad factors can enter into the prosecutor's decision. Two persons may have committed what is precisely the same legal offense but the prosecutor is not compelled by law, duty or tradition to treat them the same as to charges. * * *"

In *United States* v. *Alarik* (C. C. A. 8, 1971), 439 F. 2d 1349, we note the following in the headnotes of the case:

"1. District and Prosecuting Attorneys

"A prosecutor may exercise discretion in deciding who should be prosecuted as long as he does not deliberately discriminate between persons in similar circumstances based on an unjustifiable standard such as race, religion, or other arbitrary classification."

Based upon all of such review, we hold that there was no error in the trial court's overruling of the defendant's

motion to dismiss upon the basis of unconstitutional treatment.

## III

As to assignment of error number three, upon a review of the record, we find that the statement given to the police officers by defendant was freely and voluntarily given, and that there was no coercion, threats or intimidation involved. Further, it would appear that the defendant's constitutional rights were explained to him prior to the taking of his statements. Therefore, we overrule this assignment of error.

## IV

Defendant, in his fourth assignment of error, argues that he had waived the jury due to the ruling of the trial court that the court would not submit the question of conspiracy to the jury, but would only submit the question as to whether this defendant aided and abetted his accomplice Laws.

Further, the defendant argues that the court erred prejudicially in this regard when it, in pronouncing its decision, based such upon a finding of a conspiracy among the parties as to the assault upon Mrs. Smith.

In the first instance, we have no means of knowing, at least upon a review of the record, why the defendant, with the knowledge and consent of counsel, saw fit to waive the remainder of his trial by jury. However, even though it was for the reason argued by defendant, we see no prejudicial error committed by the trial court.

In explaining the reasons for rejecting the state's proferred instruction, the court did use some language indicating that inasmuch as the "original" conspiracy relating to the robbery of the manager of the steak house had terminated, only the issue of aiding and abetting would be submitted to the jury.

However, in the decision as later verbally given by the trial court, he quite correctly referred to an entirely different conspiracy in which the defendant was involved. That was the common design or undertaking to commit an unlawful act upon the person of Mrs. Smith.

We hold that there were, in effect, two different conspiracies—the original and the later one leading to the tragic death of Mrs. Smith—in which this defendant was an aider and abettor.

Further, in this regard, even though the trial court did not find such a conspiracy, the state of the facts of this case was such that the trial court could, as we prevously indicated, have found this defendant guilty as an aider and abettor on the basis that the latter knew that the perpetrator had the required intent.

## V

The trial court properly reviewed the judgment and denied the motion for a new trial. We find no error in such order, and therefore overrule this fifth assignment of error.

The judgment of the Court of Common Pleas of Franklin County is hereby affirmed.

*Judgment affirmed.*

TROOP, P. J., and STRAUSBAUGH, J., concur.