OPINION
Defendant-appellant, Denicholas Stoutmire, appeals his conviction in the Mahoning County Court of Common Pleas on a single count of complicity to commit aggravated murder and three counts of complicity to commit attempted aggravated murder. For each of these offenses, appellant was also convicted of firearm specifications.
At the time of the events in question appellant was associated with the Crips gang. (Tr. 248-49, 349-50). On June 10, 1996, members of the Bloods, a rival gang, opened fire on members of the Crips. (Tr. 253-54, 360-61). Edward McGaha, an affiliate of the Crips, was wounded and taken to the hospital. (Tr. 362, 365). Upon his return from the hospital, McGaha and other Crips gang members plotted their revenge against the Bloods. (Tr. 268, 371). The resulting plan called for the killing of Richard Miles, a.k.a. "Boom," the primary perpetrator of the earlier attack. (Tr. 268, 371)
In order to execute their revenge, members of the Crips stole two vehicles, borrowed a third, and began searching the streets of Youngstown for Bloods. (Tr. 269-272, 275). Appellant drove one of the stolen vehicles, a Pontiac Bonneville. (Tr. 177, 377). Damian Williams rode in the front passenger seat, Leslie Johnson rode in the back seat behind Williams, and Sidney Cornwell rode in the back seat behind appellant. (Tr. 377-78)
Appellant stopped the car in front of an apartment building on Oak Park Street in Youngstown, Ohio. (Tr. 184, 191). Cornwell asked the two individuals on the porch if Miles was at the apartment. (Tr. 186). When they replied that Miles was not at the apartment, Cornwell shouted, "Tell Boom this." (Tr. 188) Cornwell then opened fire on the house shooting Donald Meadows, Samuel Lagese, Marilyn Conrad, and killing three-year-old Jessica Ballew. (Tr. 110-112, 189)
On July 26, 1996, appellant was indicted on one count of complicity to commit aggravated murder, in violation of R.C.2923.03(A)(2) and 2903.01(A) and three counts of complicity to commit attempted aggravated murder, in violation of R.C.2923.03(A)(2) and 2923.02(A) and 2903.01(A). Each of the counts also carried with it a firearms specification pursuant to R.C.2941.141 and R.C. 2929.71(A).
On September 24, 1996, a jury found appellant guilty of all charges and specifications. Appellant was sentenced to a term of life imprisonment for count one, and to terms of not less than ten nor more than twenty-five years of actual incarceration each for counts two, three, and four, with a term of three years actual incarceration for each firearm specification.
Appellant filed his timely notice of appeal on October 3, 1996.
Appellant's first two assignments of error claim that his convictions are against the manifest weight of the evidence and therefore will be addressed together. Appellant's first assignment of error states:
 "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS FOUNDED BY APPELLANT'S ROLE AS AN ALLEGED `AIDER AND/OR ABETTOR.'"
Appellant argues that his mere association with Cornwell was not enough to establish that he was an aider or abettor, citing State v. Sims (1983), 10 Ohio App.3d 56, in support. He points to the testimony of co-defendant Williams, who stated that appellant did not have a gun on the night in question. (Tr. 173). Williams also testified that nobody, including appellant, told Cornwell to shoot at the apartment. (Tr. 226). Finally, appellant relies on Williams' testimony that when they drove away from the apartment, appellant said, "Damn. There was a baby on the porch." (Tr. 189-90). Appellant argues that this statement demonstrated his disapproval with Cornwell's actions.
Appellant argues that the act of driving the Bonneville to the Oak Park Apartment in search of Miles was not an act of aiding or abetting Cornwell. Appellant cites to the case ofState v. Starr (1970), 24 Ohio App.2d 56, syllabus, for the proposition that a conviction as an aider or abettor requires proof beyond a reasonable doubt that the accused advised, hired, incited, commanded, counseled, or otherwise participated as a co-conspirator, or had some connection with the transaction preceding its occurrence other than merely seeing the crime being committed.
In response, plaintiff-appellee, State of Ohio, argues that a complicity conviction is proper where the defendant has a role in the commission of the offense, citing Sims, supra, in support. Appellee specifically points to the evidence that appellant drove the Bonneville to the Oak Park apartment on the night of the shootings, fled the scene after Cornwell fired shots, and afterwards went into hiding. (Tr. 276-77, 397) Appellee also relies on the testimony of Edward Bunkley that appellant and his associates knew they had to kill Miles and that both Williams and Cornwell had guns on them that night. (Tr. 278-79, 343)
Appellee argues that the above evidence proves that appellant was more than a passive spectator at the scene of the shootings. Appellee claims that appellant helped to put in motion a sequence of events that eventually lead to the shooting of three people and the death of a little girl. Appellee cites the case of State v. Pruett (1971), 28 Ohio App.2d 29, 34, which held that "[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed."
Appellant's second assignment of error states:
 "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS FOUNDED IN APPELLANT ACTING WITH PRIOR CALCULATION AND DESIGN."
Appellant argues that he had no intention to kill anyone on the porch of the Oak Park apartment. He further argues that Cornwell's action of opening fire on the night in question was an independent act unrelated to any common plan involving appellant.
In response, appellee argues that appellant did act with prior calculation and design. Appellee states that the testimony demonstrated that appellant drove one of the stolen cars in search of Miles and that he and the others in the cars intended to find and kill Miles. (Tr. 271-72, 343)
Although couched in terms of manifest weight, appellant seems to be challenging the sufficiency of the evidence. Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113 (citing State v. Jenks
[1991], 61 Ohio St.3d 259, paragraph two of the syllabus).
Alternatively, in determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasissic.) Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Id., 78 Ohio St.3d at 390 (Cook, J., concurring). "A reversal based on the weight of the evidence, moreover, can occur only after the State both has presentedsufficient evidence to support conviction and has persuaded the jury to convict." (Emphasis sic.) Id., 78 Ohio St.3d at 388.
Appellant was convicted of complicity to commit aggravated murder, a violation of R.C. 2923.03(A)(2) and 2903.01(A) for the killing of Jessica Ballew. R.C. 2923.03 provides in pertinent part:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *
"(2) Aid or abet another in committing the offense [.]"
R.C. 2903.01(A) provides that:
 "(A) No person shall purposely, and with prior calculation and design, cause the death of another."
With respect to the remaining three victims, appellant was convicted of complicity to commit attempted aggravated murder, in violation of R.C. 2923.03(A)(2), 2903.01(A), and 2923.02(A). R.C. 2923.02(A) states in pertinent part:
 "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 Sims, supra, defined the terms "aid" and "abet." "To aid is to assist. To abet is to incite or encourage. Mere association with the principal is not enough." Id.,10 Ohio App.3d at 58. Several appellate courts have held that overt acts of assistance such as driving a getaway car, constitute aiding and abetting. See State v. Cartellone, (1981), 3 Ohio App.3d 145,150; State v. Trocodaro (1973), 36 Ohio App.2d 1, 6.
In the present case there was ample evidence presented that appellant drove the Bonneville both to and from the apartment where the shootings took place. Williams, Bunkley, and McGaha each testified that appellant was driving the Bonneville from which the shots were fired. (Tr. 171, 287, 377). Furthermore, as appellee previously stated, participation in criminal intent can be inferred from presence, companionship, and conduct before and after the offense is committed. Pruett, supra. In addition to driving the car, appellant also conspired with Cornwell and the others to shoot Miles, fled from the scene of the crime, and subsequently went into hiding.
The Ohio Supreme Court has stated that there is no bright line test to determine the presence or absence of prior calculation and design. State v. Taylor (1997), 78 Ohio St.3d 15. "Instead, each case turns on the particular facts and evidence presented at trial." Id., 78 Ohio St.3d at 20. This court has held that, "[w]here evidence adduced at trial reveals sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." State v. Poole
(1996), 116 Ohio App.3d 513, 527.
In the case at bar, there was evidence presented which demonstrated a plan to implement the calculated decision to kill Miles. Appellant and other Crips associates stole two cars, borrowed one, and set out in search of Miles. Williams testified that he and Cornwell had guns while in the car appellant was driving. (Tr. 173-74). He also testified that they were looking for Miles and if they found him they planned to shoot him. (Tr. 175). Bunkley testified that during the night there was talk about getting back at Miles by shooting him. (Tr. 268). He also testified that they all knew that they had to kill Miles. (Tr. 343). McGaha testified that they wanted to "get" Miles or any other member of the Bloods. (Tr. 402)
The above testimony demonstrates that appellant and the others had sufficient time and opportunity to plan to kill Miles. Furthermore, the circumstances surrounding the murder of Jessica Ballew and the shooting of the three other victims resulted from the scheme designed to implement the calculated decision to kill Miles. Therefore, there was sufficient evidence presented to prove that appellant acted with prior calculation and design.
For the reasons stated above, appellant's first two assignments of error are without merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT ERRED IN SUBMITTING JURY INSTRUCTION [sic] REGARDING TRANSFERRED INTENT OVER DEFENSE COUNSEL'S OBJECTION, AND IN NOT INCLUDING AN INSTRUCTION AS TO THE LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER."
Appellant argues that in other cases involving transferred intent, the victim is present or believed to be present at the time of the act. In the present case, appellant states, nobody believed that the intended victim, Miles, was present at the apartment where the shooting took place.
The trial court stated:
 "This Court is of the opinion that the intention to kill the original intended victim cannot be transferred under the transferred intent doctrine under the facts of this case since the original intended victim was not present when the shooting occurred.
 "However, because a shooting did occur with persons present and known to the perpetrator or perpetrators and other persons unknown to them were also hit by bullets fired, the doctrine of transferred intent can and does apply to the persons who were — the unknown persons who were injured by the purposeful shooting at persons who the perpetrator was aware of." (Tr. 722)
In State v. Williams (Mar. 20, 2000), Mahoning App. No. 98 CA 74, unreported, 2000 WL 309390, this court rejected temporal and spatial arguments similar to those advanced by appellant here. We observed:
 "The doctrine of transferred intent is a long-standing feature of Ohio's criminal law. See Wareham v. State (1874), 25 Ohio St. 601. The most common uses of the doctrine in an aggravated murder setting are in instances where an unintended or mistakenly identified individual is killed. For instance, if the defendant makes a calculated decision to kill a particular person, then the defendant is guilty of aggravated murder if any bystander is accidentally killed during the defendant's attempt to kill his intended victim. See State v. Richey (1992), 64 Ohio St.3d 353, 364 (holding that where the intended victims escape from an act of arson but a baby dies in the fire, the defendant's intent regarding the individuals that escaped transfers to the baby). This type of case is also often characterized by stray bullets which result in the death of a bystander rather than the intended victim. Similarly, if a defendant kills someone whom he thinks is his intended victim and later finds out that he misidentified his victim, then the defendant is just as guilty as if he killed his intended victim.
 "However, the scope of the transferred intent doctrine has been expanded beyond these two situations by the Ohio Supreme Court through its decisions in State v. Solomon (1981), 66 Ohio St.2d 214 and State v. Sowell (1988), 39 Ohio St.3d 322. In these decisions, the court determined that the doctrine would be applicable to those situations in which a defendant makes a calculated decision to kill someone and while engaging in his scheme to kill his intended victim, he purposely, but maybe not with actual prior calculation and design, kills someone else. * * *
 "In the case of Solomon, supra, the defendant entered an apartment after making a calculated decision to kill a certain man. When the man's wife tried to stop the defendant, the defendant intentionally shot the wife in the throat. Apparently, due to the short amount of time that occurred between the defendant entering the apartment and his shooting of the wife, the state desired to prove prior calculation and design in the wife's murder by utilizing the defendant's intent to kill the husband. Thus, the doctrine of transferred intent was used at trial to convict the defendant of aggravated murder.
 "The Supreme Court agreed that the doctrine of transferred intent was applicable in such a scenario, holding:
 "`[T]he culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim. Therefore, we hold that if one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R.C. 2903.01(A).' Id. at 218.
 "An extension of this holding occurred in Sowell, supra. In this case, the defendant made a calculated decision to kill a certain woman who was staying with his neighbor. After appellant arrived at the neighbor's apartment with a gun and voiced his intentions, the neighbor attempted to talk appellant out of causing any harm. The neighbor's persuasion initially appeared to be working. As the neighbor was walking appellant out of the apartment, appellant turned around and shot the neighbor in the abdomen and then in the head. The Ohio Supreme Court stated that the neighbor's death was the result of the scheme designed to implement the defendant's calculated decision to kill the woman. Id. at 331. Hence, the court held that the defendant acted with prior calculation and design under the doctrine of transferred intent. Id. See, also, United States v. Concepcion (C.A.2, 1992), 983 F.2d 369, 382
(upholding the use of the doctrine of transferred intent where the defendant intentionally shot a victim who was not the originally intended victim but who threatened to stop him as he was about to carry out a scheme against the originally intended victim); State v. Prichard (Feb. 7, 1996), Hamilton App. No. C-941011, unreported at 5 (stating, in a case where the victim's death was not accidental, that where the requisite intent exists to kill any person at the time of the homicide, then this intent could be transferred to the victim)
 "In reviewing the authority cited by the court in reaching its decision in Sowell, this court is provided valuable insight in regards to appellant's temporal and spatial arguments. Particularly, the case of Murry v. State (Wyo. 1986), 713 P.2d 202 is helpful in determining what, if any role, the temporal and spacial elements are to have in applying the transferred intent doctrine.
 "In Murry, the defendant was frequenting a liquor establishment with his wife when he became involved in an altercation. After spending several hours in the bar, defendant exchanged words with a fellow bar patron. As a result, the patron struck the defendant in the nose, knocking him to the floor. Infuriated by these actions, defendant immediately left the establishment and went to his vehicle in the parking lot in order to obtain a shotgun. Defendant then stuck his head inside the bar door and requested that the patron come outside. Realizing that her husband was likely to cause serious physical harm to the bar patron should he go outside, defendant's wife persuaded two other individuals to go outside in an attempt to calm her husband. Within two to three minutes, one of the individuals who had been sent outside lay dead from a shot fired by the defendant. Based upon these facts, it was the Wyoming Supreme Court's ultimate decision that the trial court properly utilized the transferred intent doctrine to find the defendant guilty of first degree murder. Id. at 205. The court reasoned that since the defendant had clearly intended to kill the bar patron, said intent could be transferred to the individual who was ultimately killed in the parking lot. Id."
This court then went on to hold as follows:
 "Based upon the state of the law as it currently exists in Ohio, this court is compelled to hold that the trial court correctly instructed the jury as to transferred intent. As the Ohio Supreme Court clearly and unambiguously stated in both Solomon
and Sowell, the test simply is whether a defendant `purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim.' (Emphasis added). Solomon at 218; Sowell at 330. In neither of its decisions does the Ohio Supreme Court take the opportunity to provide limiting factors beyond this test as related to the applicability of the transferred intent doctrine."
In the present case, Cornwell fired at the porch when he knew that at least two people were present. He may not have intended to shoot Jessica Ballew or the victims inside the apartment. However, he fired at the apartment knowing that it was where the intended victim, Miles, and his associates, other members of the Bloods, frequented. Cornwell's intent to shoot the two on the porch can be transferred to Ballew and the other victims who were inside. Therefore, the trial court did not err in giving the jury an instruction on transferred intent.
Turning to appellant's second argument under this assignment of error, appellant admits that he did not request a jury instruction on involuntary manslaughter. However, he claims that the trial court's failure to include such an instruction rises to the level of plain error. Appellant asserts that involuntary manslaughter is a lesser included offense of aggravated murder and the instruction should be given when the evidence presented would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense, citing State v. Thomas (1988), 40 Ohio St.3d 213, paragraphs one and two of the syllabus.
Crim.R. 30 of the Ohio Rules of Criminal Procedure provides that a party may not assign as error the failure to give an instruction unless he objects before the jury retires to consider its verdict. Since appellant failed to request a jury instruction on involuntary manslaughter, he waived the right to appeal the issue absent plain error. State v. Underwood (1983),3 Ohio St.3d 12, 13. A plain error is one that is outcome determinative, i.e., but for the error, the outcome of the trial would have been different. State v. Long (1978), 53 Ohio St.2d 91. In order to hold that the trial court's jury instructions constituted plain error, we must determine that alleged error resulted in a clear miscarriage of justice. Id.,53 Ohio St.2d at 94.
As appellant stated, involuntary manslaughter is a lesser included offense of aggravated murder and is required when the evidence would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. Thomas,supra. However, the instruction was not required unless the evidence at trial reasonably supported a conviction of involuntary manslaughter and an acquittal of complicity to commit aggravated murder. As discussed in the preceding assignments of error, the evidence presented supported the conviction of complicity to commit aggravated murder, not an acquittal on that charge. Therefore, an instruction on involuntary manslaughter was not warranted. Had such an instruction been given to the jury, the outcome would remain the same.
For the reasons stated above, appellant's third assignment of error is without merit.
Accordingly, the decision of the trial court is hereby affirmed.
Cox, J. and Waite, J., concurs
APPROVED:
 ______________________ Gene Donofrio, Judge