[Cite as *State v. Gonzalez*, 2011-Ohio-5253.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96102**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## EDGAR GONZALEZ

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-504595

**BEFORE:**    Blackmon, P.J., Sweeney, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**    October 13, 2011

**ATTORNEY FOR APPELLANT**

Brian R. McGraw
1370 Ontario Street
Suite 2000
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Kevin R. Filiatraut
Brian R. Radigan
Assistant County Prosecutors
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Appellant Edgar Gonzalez ("Gonzalez") appeals his convictions for aggravated robbery and felonious assault and assigns the following four errors for our review:

> **"I.  The prosecutor committed misconduct when he equated that the defendant's absence from the last day of trial with a belief that he knew he was guilty."**
>
> **"II. Gonzalez's convictions should be reversed due to insufficiency of evidence and a failure of the state to carry the manifest weight of the evidence."**

**"III.   Gonzalez was sentenced by a judge who did not preside over his case.   The sentencing judge was not sufficiently familiar with the evidence to mete out a sentence, and a new trial should be granted."**

**"IV.   The court's refusal to consider the defendant's remarks at sentencing violates his right to a fair and just sentencing under Criminal Rule 32 and R.C. 2929.19."**

{¶ 2}   Having reviewed the record and pertinent law, we affirm Gonzalez's convictions.   The apposite facts follow.

{¶ 3}   On December 17, 2007, Gonzalez and his co-defendant David Oajaca ("Oajaca") were indicted for five counts of aggravated robbery and two counts of felonious assault.   Oajaca pled guilty to one count each of aggravated robbery and felonious assault and agreed to testify against Gonzalez.   Gonzalez entered a not guilty plea and the matter proceeded to trial.

{¶ 4}   At trial, the evidence showed that on November 14, 2007, Gonzalez and his cousin, Oajaca, were at Gonzalez's house located at 18808 Ferncliff Avenue in Cleveland, Ohio.   They owed money to the drug dealer who provided them with the crack cocaine and decided to rob Neighbor's Choice located on Rocky River Drive to obtain the money.

{¶ 5}   Around 2:50 p.m., Gonzalez and Oajaca proceeded to the grocery store in Gonzalez's van.   Gonzalez entered the store first to stake it out.   He purchased a candy bar and left.   Oajaca then went into the store wearing a skeleton sweatshirt zipped up to cover his face.   While brandishing a large butcher knife, he proceeded to rob the store. The robbery was filmed on the store's surveillance video camera.

{¶ 6}  Sun Han was working the register when Oajaca entered the store.  Sun's 83-year old disabled mother-in-law, Mae Han, was sitting near the front of the store. When Oajaca entered the store, he placed the knife to Mae's throat and demanded money from her and Sun.  Sun ran screaming to the back of the store where her husband, Hae Kuk Han, was working.  Angry because he did not get any money, Oajaca stabbed Mae in the back as he left the store.  Fortunately, his knife did not pierce her thick coat.

{¶ 7}  While Oajaca proceeded to the van, Hae exited the rear of the store and confronted Oajaca.  Oajaca attempted to stab Hae who had taken off his belt to defend himself.  Hae heard the driver of the van yell to Oajaca, "get in."  Hae hit the driver's side window of the van with his belt, breaking it, in an attempt to prevent the van from fleeing.  Hae then called 911 and gave police the van's license plate number.

{¶ 8}  The police ran the license plate and discovered the owner was listed as Casa Builders Remodelers with Edgar Gonzalez as the additional owner.  The address listed was Gonzalez's address on Ferncliff Avenue. When police arrived at the address, they observed the van pull into the driveway and then pull out again.  The police followed the van as it left Gonzalez's house and then stopped it.  The officer testified that Gonzalez was driving the van.  He asked Gonzalez whether he had a problem at the store because his driver's side window was broken.  Gonzalez denied being at the store and told the officer that he was on his way to work.

{¶ 9}  Police took both Gonzalez and Oajaca back to the store where the Hans identified them as the robbers.  A search of Gonzalez's house revealed the skeleton

sweatshirt that was worn by Oajaca and several knives. Police were unable to determine which knife was used in the robbery.

{¶ 10} Gonzalez failed to appear for the last day of trial; the judge issued a capias. The jury convicted Gonzalez of all counts. Gonzalez was apprehended over two years later when he was arrested on an unrelated charge in Texas. He was returned to Ohio for sentencing. His trial judge had resigned after being implicated in the Cuyahoga County corruption scandal; therefore, a visiting judge was appointed to impose the sentence. Gonzalez was sentenced to a total of 17 years in prison.

## Prosecutorial Misconduct

{¶ 11} In his first assigned error, Gonzalez argues the prosecutor engaged in misconduct during closing argument by telling the jury that Gonzalez's absence at trial showed Gonzalez knew he was guilty.

{¶ 12} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Keenan* (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203; *State v. Gest* (1995), 108 Ohio App.3d 248, 257, 670 N.E.2d 536. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips* (1982), 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78. The effect of the prosecutor's misconduct must be considered in light of the whole trial. *State v. Durr* (1991), 58 Ohio St.3d 86, 94, 568 N.E.2d 674; *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 473 N.E.2d 768. A prosecutor is afforded wide latitude during closing argument; it

is within the trial court's sound discretion to determine whether a comment has gone too far. *State v. Benge* (1996), 75 Ohio St.3d 136, 661 N.E.2d 1019. Gonzalez contends the prosecutor engaged in misconduct by stating as follows:

> **"Now, the defense mentioned the elephant in the room. It's plainly obvious there is one. He speculates on reasons why Mr. Gonzalez might not be here. Let me just offer one. He saw his cousin testify against him yesterday, and knew it was true."** Tr. 481.

{¶ 13} The trial court overruled defense counsel's objection to the above statement. We conclude no reversible error occurred because the prosecution's statement was in response to defense counsel's conjecture on why Gonzalez was not present. Defense counsel suggested that "sometimes there are reasons, good reasons. Sometime they're not good reasons. Sometimes they're medical reasons. Sometimes people leave, get frightened." Tr. 464.

{¶ 14} In *State v. Essa*, Cuyahoga App. No. 94826, 2011-Ohio-2513, we recently addressed a situation where in response to defense counsel's speculation, the prosecutor speculated on reasons why the defendant fled the country. We concluded the prosecutor did not engage in misconduct and held "'[i]t is well settled that a party cannot complain of an opponent's argument to the jury where it amounts to only a reply in kind to matters argued' by the complaining party." Id., citing *State v. Hopkins,* 10th Dist. No. 05AP-338, 2006-Ohio-232, ¶31.

{¶ 15} Likewise, in the instant case, the prosecutor was merely responding to defense counsel's speculation on why Gonzalez was not present. In fact, the prosecutor did not mention Gonzalez's absence until the rebuttal closing argument after defense counsel mentioned Gonzalez's absence during closing argument. Accordingly, Gonzalez's first assigned error is overruled.

### Sufficiency and Manifest Weight

{¶ 16} In his second assigned error, Gonzalez argues his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Specifically, he argues that the evidence indicated that Oajaca performed all of the criminal deeds and that there was no evidence, except for testimony by Oajaca that Gonzalez helped plan the robbery.

{¶ 17} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

{¶ 18} In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d

492, paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965.

{¶ 19} To prove complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the prosecution must show "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, syllabus. Intent may be inferred based upon the circumstances surrounding the crime. Johnson at syllabus.

{¶ 20} In addition, aiding and abetting may also be established through overt acts of assistance. *State v. Trocodaro* (1973), 36 Ohio App.2d 1, 6, 301 N.E.2d 898. However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 431 N.E.2d 1025. Furthermore, aiding and abetting requires the accused to have taken some role in causing the offense. *State v. Sims* (1983), 10 Ohio App.3d 56, 59, 460 N.E.2d 672.

{¶ 21} In the instant case, the evidence went well beyond Gonzalez's "mere presence" at the scene. Oajaca testified that Gonzalez came up with the idea to rob the store to obtain the money to pay the dealer. The plan included Gonzalez driving Oajaca to the grocery store; Gonzalez going into the grocery store to see who was in the store; informing Oajaca what he observed; Oajaca then robing the store. Oajaca also stated that Gonzalez was aware that Oajaca was using a knife to rob the store. After the robbery,

Gonzalez and Oajaca returned to Gonzalez's house where Oajaca changed his clothes. Based on this evidence, a reasonable jury could have found that Gonzalez took an active role in the burglary.

{¶ 22} Gonzalez argues that Oajaca's testimony was not credible, which goes to the manifest weight of the evidence. In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N .E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the**

**basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."**

{¶ 23} Gonzalez argues that Oajaca was not credible because he testified in exchange for a plea; however, the jury was well aware he was testifying in the hope of receiving a favorable sentence. Gonzalez also argues that on cross-examination, Oajaca admitted he was high when he committed the robbery and could not explain why he stabbed Mae; therefore, it was impossible for him to have directed Oajaca when his actions were unpredictable. Just because Oajaca was high and could not explain why he stabbed Mae does not absolve Gonzalez from complicity with Oajaca's acts. Gonzalez was smoking the crack with Oajaca and therefore, was aware he was high. He was also aware he was going to use a knife to rob the store; therefore, he was aware of the risk of harm to the people in the store.

{¶ 24} Gonzalez also argues that Oajaca admitted on cross-examination that he told police that he was the one that came up with the robbery plan. However, even if Oajaca planned the robbery, evidence independent of Oajaca's testimony indicated that Gonzalez participated in the robbery. Hae Kuk Han testified that he heard Gonzalez yelling for Oajaco to "get in" the van before they drove away and identified Gonzalez as the driver of the van. Oajaca's skeleton sweatshirt that he wore during the robbery was

also found at Gonzalez's home. Gonzalez also lied to police by telling them he had not been at the grocery store and that he was on his way to work. The video of the robbery shows Gonzalez in the store prior to the robbery and the description of the get-away van and license plate matched the van Gonzalez was driving when stopped by police. Accordingly, Gonzalez's second assigned error is without merit and is overruled.

## Different Judge at Sentencing

{¶ 25} In his third assigned error, Gonzalez argues that the sentencing judge was not adequately familiar with the evidence to impose a sentence.

{¶ 26} Gonzalez did not appear for his last day of trial and was not apprehended until over two years later. Therefore, sentencing did not take place immediately after his conviction. If Gonzalez had appeared as he was required, he would have been sentenced by the same judge who conducted his trial. Therefore, he contributed to creating the problem of having a different judge for sentencing.

{¶ 27} Additionally, Gonzalez did not object to the visiting judge presiding over his sentence. When the record indicates the original judge is unavailable, any party objecting to the reassignment must raise that objection at the first opportunity; otherwise, any claim of error is waived. *State v. Pecina* (1992), 76 Ohio App.3d 775,778, 603 N.E.2d 363; *State v. McGonnell*, Cuyahoga App. No. 85058, 2005-Ohio-3157.

{¶ 28} Moreover, there is no indication the trial court was not sufficiently apprised of the facts underlying the conviction. Pursuant to Crim.R. 25, when the presiding judge is unavailable for sentencing, a designated judge may be assigned to perform the duties of

the court. If the assigned judge "is satisfied that he cannot perform those duties because he did not preside at the trial, he may in his discretion grant a new trial." Crim.R. 25. Here, the trial court watched the video of the robbery, read the presentence investigative report, and listened to the arguments of the prosecutor, defense counsel, and Gonzalez prior to imposing sentence. Thus, the record shows that the assigned judge took steps to assure he had sufficient information prior to sentencing Gonzalez. Accordingly, Gonzalez's third assigned error is overruled.

## Right to Allocution

{¶ 29} In his fourth assigned error, Gonzalez contends his right to a fair and just sentencing pursuant to Crim.R. 32 and R.C. 2929.19 was violated because the trial court refused to listen to him at sentencing.

{¶ 30} The trial court allowed Gonzalez to address the court prior to sentencing him. Gonzalez told the court he was a hard working person who operated a successful business. He also stated that his cousin, Oajaca, was a convicted robber and drug addict who he took in when no one else in the family would. In response, the trial court told Gonzalez his explanations were "falling on deaf ears." In so stating, the court did not mean he was not listening to him, but that he was not persuaded by Gonzalez's excuses. The court commented on Gonzalez's awareness of what his cousin planned to do at the store and that Gonzalez had also recently pled guilty to possession of drugs. Thus, the trial court clearly listened to what Gonzalez had to say, it just did not find him persuasive. Accordingly, Gonzalez's fourth assigned error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
EILEEN A. GALLAGHER, J., CONCUR