[Cite as *State v. Polite*, 2018-Ohio-1372.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2017 CA 00129 |
| RANDY R. POLITE | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No. 2016 CR 02311(B)


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:     April 9, 2018


APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

JOHN D. FERRERO              DENNIS DAY LAGER
PROSECUTING ATTORNEY       1025 Chapel Ridge, NE
KATHLEEN O. TATARSKY        Canton, Ohio  44714
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702

*Wise, P. J.*

{¶1}   Appellant Randy R. Polite appeals his conviction on one count of Trafficking in Cocaine and one count of Possession of Cocaine following a jury trial in the Stark County Court of Common Pleas.

{¶2}   Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS</u>

{¶3}   On January 19, 2017, the Stark County Grand Jury indicted Appellant, Randy Rashaud Polite, on one count of trafficking in cocaine, a violation of R.C. §2925.03(A)(2), [F1]; one count of possession of cocaine, a violation of R.C. §2925.11(A)(C), [F1]; one count of trafficking in heroin, a violation of R.C. §2925.03(A)(2), [F3]; and, one count of possession of heroin, a violation of R.C. §2925.11(A)(C)(4), [F5]. The indictment alleged that Appellant either committed the crimes himself and/or aided or abetted another in so doing.

{¶4}   Appellant's charges stemmed from investigation in December, 2016, wherein the Special Investigation Unit of the Canton Police Department was conducting surveillance on the Towne Manor Motel following reports that members of the Shorb Bloc gang were selling drugs from certain units. (Bill of Particulars, Feb. 17, 2017). The surveillance started the morning of December 8, 2016, and concentrated on three Units at the motel – Units 84, 86 and 88. The police department had previously obtained a search warrant from the Canton Municipal Court to allow them to search said units. (T. at 261-266)

{¶5}   During their surveillance, heavy traffic was witnessed entering and leaving Units 86 and 88. Two of their "targets" were seen leaving those units and going into Unit

100. The "targets" were in there a short time, came back out and went again to Unit 100. The two "targets" were then seen leaving Unit 100 with Appellant. (T. at 175-177).

{¶6} Appellant got into a tan colored sedan "like a Grand Marquis." Officer Joseph Bays, who was alerted to follow it in a marked cruiser, stopped the vehicle. Appellant did not give Officer Bays his name and a subsequent search revealed that he had no drugs or drug paraphernalia with him in the car. (T. at 194, 207).

{¶7} In the meantime, Detective Bryan Jeffries obtained a search warrant for Unit 100. Unit 100 was searched by members of the Special Investigations Unit including Detective Mike Volpe. (T. at 212-222). In Unit 100, on top of the nightstand in plain view, Det. Volpe saw a digital scale. The scale was collected as evidence and was found to contain cocaine residue. In a drawer of the nightstand, Det. Volpe found a clear plastic bag containing a chunk of hard white material which was later identified as 28.6 grams of crack cocaine. The nightstand drawer also contained $120.00 in cash.

{¶8} At trial, Det. Volpe opined that the solid chunk of crack cocaine would be broken into "stones" for resale. When broken up, individual rocks would be repackaged in small plastic bags and sold. Depending on the size and quality of the "stone", it could range from $10.00 to $100.00 per stone. (T. at 220-221).

{¶9} On a table in Unit 100, Det. Volpe also found two cell phones, an ashtray with a blunt of marijuana, and a single-edged razor blade. Det. Volpe explained that the razor blade would be used to break the solid chunk of crack cocaine into individual "stones" in preparation for sale.

{¶10} On the television stand, Det. Volpe observed a box of sandwich bags and a clear mason jar containing a white substance. When Jay Spencer of the Stark County

Crime Lab tested the white substance in the mason jar, it was found to contain .26 grams of crack cocaine residue. (T. at 238).

{¶11} Unit 100 also contained two identification cards that did not contain Appellant's name and a food stamp card with the name Terry Copeland. (T. at 270). Detective Jeffries opined that in his experience, people often traded food stamps for drugs. (T. at 274).

{¶12} Additionally, the officers found a Go Pro and an Amazon Kindle in the room. There was a receipt from Walmart for the Go Pro, and Appellant told Detective Jeffries that he purchased it. (T. at 278-279).

{¶13} When Appellant was arrested, he gave the address of the Towne Manor Motel as his residence. (T. at 278).

{¶14} During the course of the investigation, Detective Jeffries learned that Appellant was registered as the renter of Unit 100, and that he had been occupying it for about a month. (T. at 266-267). There were no suitcases or clothing in Unit 100.

{¶15} A mixture of heroin and fentanyl was found in the globe of a bathroom light. (T. at 193).

{¶16} On June 7, 2017, a jury trial proceeded in this matter. The jury was allowed to take notes and ask questions of the witnesses.

{¶17} The State called five witnesses, including four members of the Canton Police Department in the Special Investigations Unit, and Jay Spencer, a forensic expert with the Stark County Crime Laboratory, who testified to the facts as set forth above.

{¶18} Appellant called no witnesses and rested after his motion for judgment of acquittal was denied.

{¶19} After hearing the evidence and receiving instructions from the trial court, the jury began its deliberations on the second day of the trial. The jury returned with verdicts of guilty to the crimes of trafficking in cocaine and possession of cocaine and not guilty to the crimes of trafficking in heroin and possession of heroin.

{¶20} The trial court immediately proceeded to sentencing, imposing a mandatory prison term of six years. The trial court merged the possession of cocaine conviction with the conviction for trafficking in cocaine.

{¶21} Appellant now appeals, raising the following errors for review:

ASSIGNMENTS OF ERROR

{¶22} "I. DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BY ERROR PERVASIVE IN HIS TRIAL, WHICH AFFECTED THE FRAMEWORK THEREOF AND WHICH DENIED DEFENDANT-APPELLANT HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND BY ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶23} "II. DEFENDANT-APPELLANT WAS PREJUDICED AND DENIED A FAIR AND IMPARTIAL TRIAL AS CONSTITUTIONALLY GUARANTEED BY REASON OF THE TRIAL COURT'S JURY INSTRUCTIONS, WHICH DEFINED THE CHARGED OFFENSES IMPROPERLY AND WHICH INCLUDED INSTRUCTION ON OFFENSE ELEMENTS WHICH ARE NOT PRESENT OR INCLUDED IN THE DENOMINATED STATUTORY SECTIONS OF THE OHIO REVISED CODE UNDER WHICH DEFENDANT-APPELLANT WAS CHARGED AND CONVICTED.

**{¶24}** "III. THE VERDICT OF THE JURY IN THE CASE SUB JUDICE, FINDING DEFENDANT-APPELLANT GUILTY OF THE CRIMES OF TRAFFICKING IN COCAINE, IN VIOLATION OF R.C. 2925.03(A)(2)(C)( 4)(T), AND POSSESSION OF COCAINE, IN VIOLATION OF R.C. 2925.LL(A)(C)(4)(E), IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW."

**I.**

**{¶25}** In his first assignment of error, Appellant argues that the indictment was defective and therefore amounted to structural error. We disagree.

**{¶26}** Initially we note that Appellant failed to object to the alleged structural errors at trial. We therefore review such under a plain error standard.

**{¶27}** A plain-error analysis pursuant to Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Granderson,* 177 Ohio App.3d 424, 2008–Ohio–3757, 894 N.E.2d 1290 (5th Dist.), ¶ 63, citing *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *State v. Cooperrider,* 4 Ohio St.3d 226, 227, 448 N.E.2d 452 (1983).

**{¶28}** In the instant case, Appellant argues that the addition of the aiding and abetting language to the indictment resulted in charging him with an offense that does not exist under Ohio law. Upon review, we find said argument unpersuasive.

**{¶29}** In addressing this assignment of error we shall begin by examining R.C. §2923.03, which provides:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following

* * *

(2) Aid or abet another in committing the offense ."

**{¶30}** R.C. 2923.03(F) further states:

Whoever violates this section is guilty in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

**{¶31}** Here, Appellant was indicted for trafficking and possession of cocaine in terms of the principal offenses and/or aiding or abetting another in so doing. By virtue of R.C. §2923.03(F), appellant was on notice that evidence could be presented that he was either a principal offender, or an aider and abettor. *State v. Dotson* (1987), 35 Ohio App.3d 135, 138, 520 N.E.2d 240, 244.

**{¶32}** Even if the aiding and abetting language was not included in the indictment, charging a defendant in an indictment as if he were a principal will sustain proof that he acted as an aider and abettor of the principal. *State v. Senzarino* (C.P.1967), 10 Ohio Misc. 241, 39 O.O.2d 383, 224 N.E.2d 389; *State v. Smith* (Mar. 25, 1988), Allen App. No. 1–85–48, unreported, 1988 WL 32979.

**{¶33}** Accordingly, the indictment in the case *sub judice* was legally sufficient in describing the elements of the charged offense and we find no error, plain or otherwise.

**{¶34}** Appellant's first assignment of error is overruled.

**II.**

**{¶35}** In his second assignment of error, Appellant further argues that jury instructions in this matter were improper and erroneous and amounted to structural or plain error. We disagree.

**{¶36}** More specifically, Appellant argues that the trial court erred in instructing the jury on both the principal offenses of trafficking and possession of cocaine and/or aiding or abetting another in so doing.

**{¶37}** Again, Appellant failed to object to the jury instructions at trial. We therefore review this assignment of error under the plain error analysis.

**{¶38}** Upon review, we again find that under Ohio law, "there is no distinction between a defendant convicted of complicity or as a principal offender." *State v. Alexander,* 6th Dist. Wood No. WD–02–047, 2003-Ohio-6969, 2003 WL 22994222, ¶ 70. The state need not even prove "[t]he identity of the principal * * * to establish the offense of complicity by aiding and abetting." *In re T.K.,* 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, paragraph one of the syllabus.

**{¶39}** In *State v. Perryman* (1976), 49 Ohio St.2d 14, 358 N.E.2d 1040, vacated in part on other grounds sub nom, *Perryman v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156, the Ohio Supreme Court clarified Ohio's position on the issue of complicity. The Court unequivocally approved of the practice of charging a jury regarding aiding and abetting even if the defendant was charged in the indictment only as a principal. *Id.* The court held that the indictment as principal performed the function of giving legal notice of the charge to the defendant. *Id.* Therefore, if the facts at trial reasonably supported the jury instruction on aiding and abetting, it is proper for the trial

judge to give that charge. *Perryman, supra* at 27, 28, 358 N.E.2d 1040." *State v. Payton* (April 19, 1990), 8th Dist. Nos. 58292, 58346.

**{¶40}** R.C. §2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense. See *State v. Keenan* (1998), 81 Ohio St.3d 133, 151, 689 N.E.2d 929, 946, citing *Hill v. Perini* (C.A.6, 1986), 788 F.2d 406, 407-408. *State v. Herring* (2002), 94 Ohio St.3d 246, 251 762 N.E.2d 940, 949.

**{¶41}** "[To] support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus.

**{¶42}** Although the state need not establish the principal's identity, it must, at the very least, prove that a principal committed the offense. *State v. Perryman* (1976), 49 Ohio St.2d 14, 358 N.E.2d 1040, paragraph four of the syllabus; *State v. Hill* (1994), 70 Ohio St.3d 25, 28, 635 N.E.2d 1248, 1251. However, the state does not need to prove that the accomplice and principal had a specific plan to commit a crime. *Johnson,* 93 Ohio St.3d at 245, 754 N.E.2d 796. The fact that the defendant shares the criminal intent of the principal may be inferred from the circumstances surrounding the crime, which may include the defendant's presence, companionship, and conduct before and after the offense is committed. *Id.* at 245-246, 754 N.E.2d 796. This is a situation where "[c]ircumstantial evidence and direct evidence inherently possess the same probative value," *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the

syllabus, because "[t]he intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be." *In re Washington,* 81 Ohio St.3d 337, 340, 691 N.E.2d 285, 1998-Ohio-627, quoting *State v. Huffman* (1936), 131 Ohio St. 27, 1 N.E.2d 313, paragraph four of the syllabus.

**{¶43}** Here, we find that evidence supported a finding that Appellant aided and/or abetted in the trafficking and possession of cocaine charges. Cocaine was found in the room belonging to Appellant and traces of cocaine were also found on the mason jar and the digital scales found in the room.

**{¶44}** Based on the foregoing, we find no error, plain or otherwise from the instructions to the jury regarding aiding and abetting as well as the principal offenses.

**{¶45}** Appellant's second assignment of error is overruled.

### III.

**{¶46}** In his third assignment of error, Appellant argues that his convictions were against the manifest weight of the evidence and were contrary to law. We disagree.

**{¶47}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶48}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also*, *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶49}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶50}** Appellant, in the case *sub judice*, was convicted of trafficking in cocaine in violation of R.C. §2925.03(A)(2)(C)(4)(f) and possession of cocaine, in violation of R.C. §2925.11(A)(C)(4)(e), which state, in relevant part:

**{¶51}** R.C. §2925.03 Drug Trafficking

(A) No person shall knowingly do any of the following:

\*\*\*

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that

the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

***

**{¶52}** R.C. §2925.11 Drug Possession

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

***.

**{¶53}** We note the jury was instructed upon complicity on both the possession and trafficking charge in addition to principal offender language.

**{¶54}** Complicity is set forth in R.C. §2923.03 as follows:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

***

**{¶55}** As explained by this court in *State v. Butcher,* 5th Dist. Stark No. 2016CA00207, 2017–Ohio–4154, ¶ 20–22:

To support a conviction for complicity, the State must demonstrate the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and the defendant shared the criminal intent of the principal. *State v. Johnson* 93 Ohio St.3d 240, 754 N.E.2d 796, 2001–Ohio–1336. Intent may be inferred from the circumstances surrounding the crime. Id. The fact that defendant did not

articulate her intent will not allow her to escape responsibility for her clear actions of complicity by aiding and abetting in the commission of the crimes.

*Id.*

**{¶56}** Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Cartellone* (1981), 3 Ohio App.3d 145, 150, 3 OBR 163, 444 N.E.2d 68, citing *State v. Pruett* (1971), 28 Ohio App.2d 29, 34, 57 O.O.2d 38, 273 N.E.2d 884. Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *Id.* at 150, 3 OBR 163, 444 N.E.2d 68. *See State v. Trocodaro* (1973), 36 Ohio App.2d 1, 65 O.O.2d 1, 301 N.E.2d 898; *State v. Lett*, 2005–Ohio–1308, ¶¶ 27–29, 160 Ohio App. 3d 46, 52, 825 N.E.2d 1158, 1163.

**{¶57}** Here, Appellant argues that the state failed to present evidence that he ever touched, handled, owned, physically possessed, transferred or sold to another any cocaine.

**{¶58}** Possession can be either actual or constructive. Constructive possession exists when a person knowingly exercises dominion and control over an object, even though the object might not be within his immediate possession. *State v. Hankerson* (1985), 70 Ohio St.2d 87, 434 N.E.2d 1362.

**{¶59}** When viewing the evidence in the light most favorable to the prosecution, we find that sufficient evidence was presented to support Appellant's convictions. At trial, evidence was presented that Appellant was the registered renter of Unit 100 of the Towne Manor Motel. No clothing or suitcases were found in the room. Cocaine was found in a

plastic bag in a nightstand drawer in the unit. Traces of cocaine was found on a mason jar and on a digital scale in the unit. A box of sandwich bags were found on the television stand. Appellant was seen entering the unit with two other males who were targets in their surveillance investigation. Appellant was the last to leave the unit, and no one else entered prior to the search. (T. at 179, 225, 264, 266).

**{¶60}** Additionally, evidence was presented that two identification cards and a food stamp card which did not contain Appellant's name were found in Appellant's room. Testimony was provided by Officer Jeffries that food stamps and identification cards were often traded for drugs. (T. at 274, 277).

**{¶61}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

**{¶62}** Also, circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 1992–Ohio–44, 595 N.E.2d 915. It is to be given the same weight and deference as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶63}** Upon review, we find Appellant's convictions were supported by sufficient evidence and are not against the manifest weight of the evidence. Any rational trier of fact could have found the essential elements of trafficking and possession proven beyond a

reasonable doubt. Nor is this the exceptional case in which the evidence weighs heavily against a conviction.

**{¶64}**  Appellant's third assignment of error is overruled.

**{¶65}**  For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, John, P. J.

Baldwin, J., and

Wise, Earle, J., concur.

JWW/d 0328